ELIZA HOWELL et al.

*v.*

FLOYD W. TOMKINS, executor &c., et al.

Lands were devised to an executor, in trust for A for life and for B during her minority, with a gift over in case of B's death, without children, before her maturity, and with power in the executor to sell the lands. B is now twenty-one, is married, and has two children living.—*Held,* that A and B could elect to take the lands, and the executor should be enjoined from selling them, and that as B could not legally elect, on account of her coverture, the court would act for her.

*Mr. John W. Taylor,* for complainant.

*Mr. Robert McCarter,* for defendants.

BIRD, V. C.

James Tomkins died, leaving a will. He gave to his grandson, James S. Howell, his farm, lying in the county of Morris,

his horses, cattle and farming utensils, on condition that he should secure and provide a comfortable maintenance and support for Eliza, the daughter of the testator and mother of James, and to Sarah, a granddaughter of testator and a sister of James.  He also gave to James all the furniture in his house on said farm—

" To him and his heirs forever  *  *  *  Which I give and bequeath to him, my said grandson, in trust, for the use of his mother during her lifetime, and to his sister, Sarah Jane Howell, during her minority."

He also gave him a bond and mortgage for $1,300, directing the interest to be appropriated for the use and support of his said daughter and granddaughter.  He then says :

" And when my grandson, James S. Howell, shall arrive at the full age of twenty-one years he shall have full power and authority to sell and dispose of any or all of the above-named real and personal estate devised and bequeathed to him, or any part or parcel thereof, by and with the consent of his mother, Eliza Howell.  And in case my said grandson, James S. Howell, shall not survive his mother, Eliza Howell, then I do order that the aforesaid severally-named bequests to the said James S. Howell shall revert back to my son, Floyd W. Tomkins, to be held in trust by him, in all respects, in the same manner and in the same use as was intended the same should have been done by James S. Howell, to wit, for the use and support of my said daughter, Eliza, and Sarah Jane, her daughter, and to her heirs after her.  But if the said Sarah Jane die before she arrives at the age of maturity, and without issue, then it is my will, and I do order, that the said legacies in trust be equally divided between the surviving children of my son, Floyd W. Tomkins, share and share alike."

He named Floyd W. Tomkins sole executor.  The will bore date March 31st, 1855.  On February 14th, 1859, he made a codicil, in which he revoked the provision requiring the consent of his mother to the sale of the real and personal estate, and said:

" And do hereby order and direct the same to be sold, by and with the consent of my executors, if they think proper."

And concluded the codicil thus :

" Lastly.  And whereas, my grandchild, James S. Howell, has arrived at full age since my making my last will and testament, I hereby constitute and ap-

point the said James S. Howell co-executor jointly and together with my son, Floyd W. Tomkins, as named in my last will and testament."

James S. Howell died in April, 1866. The said Sarah Jane has arrived at the age of maturity, has been married eleven years, and has two children. The said Eliza, since the death of her husband, has occupied the said farm and enjoyed the rents and profits, and desires to continue so to do during her natural life. Both Eliza and Sarah Jane, the mother and daughter, claim to be the beneficial owners of the rents and profits of said farm, and consequently of the right to the possession thereof during the lifetime of the said Eliza; and the said Sarah Jane claims that having arrived at the age of maturity under the law, the fee of the said farm is vested in her absolutely. And if this be not so in strict law, they have the right of election, and in the exercise of that right, to continue to take the rents and profits, or to take the land absolutely, discharged of the trust named in the will. Such right they claim to have exercised, and insist that this court shall declare and give effect to that right by decreeing that they are entitled to the rents and profits, not only during the lifetime of Eliza, but to the actual possession and control of the said farm without the interference of the said executor, and that at the death of the said Eliza, the said Sarah Jane, her heirs and assigns, will be entitled to the fee.

The determination of this question has been precipitated by the desire of the executor to sell the farm, to restain which a preliminary injunction was granted.

Should this injunction be made perpetual? The bill might have been so framed as to have obtained the aid of the court in preventing a sale, upon the ground that it would be more beneficial to the cestuis que trustent to possess and enjoy the farm, and the rents and profits, than to receive the interest of the consideration-money in case of the sale. But the bill is not so framed. Its construction is such as to go to the root of the matter, and to warrant the court in putting such an interpretation upon the will as will determine the rights of the parties thereunder. With this in view, the question arising was discussed before me.

The defendant insists that the title is vested in Floyd W.

Tomkins, and that he is entitled to the whole estate, subject only to the trusts imposed during the lifetime of said Eliza and Sarah Jane. This I think is a forced construction, and not in accordance with the meaning of the testator. It seems to me that in one event, that is, the death of Sarah Jane before maturity and without issue, the said estate would have passed, not to Floyd W. Tomkins, but to his children ; but in the event of Sarah Jane arriving at the age of maturity or having issue before her death, she was entitled to the whole estate after the death of her mother. And this clause, it seems to me, justifies such construction, viz. :

"And in case my said grandson, James S. Howell, shall not survive his mother, Eliza Howell, then I do order that the aforesaid severally-named bequests to the said James S. Howell shall revert back to my son, Floyd W. Tomkins, to be held in trust by him, to be appropriated, in all respects, in the same manner and for the same use as was intended the same should have been done by James S. Howell, to wit, for the use and support of my said daughter Eliza, and Sarah Jane, her daughter, and to her heirs after her. But if the said Sarah Jane die before she arrives at the age of maturity and without issue, then it is my will and I do order that the said legacies in trust be equally divided between the surviving children of my son, Floyd W. Tomkins, share and share alike."

I can only read this as saying that in case James S. Howell did not survive his mother, then the testator gave and devised the said farm to his son, Floyd W., to be by him held in trust for Eliza and Sarah Jane, during the lifetime of Eliza, and, after the death of Eliza, for Sarah Jane absolutely, in case she arrived at the age of maturity. Certain it is, that in case Sarah Jane should have died before arriving at that age, the whole estate was given absolutely to the surviving children of the testator's son, Floyd W. It was absolutely given ; there was nothing left of it to be disposed of ; nothing for the executor or trustee as such, and nothing for the son, Floyd W. These are the last expressions of the testator upon the subject ; and they are clear and distinct, and though not in all respects technical, seem to convey an unmistakable intent.

But it is said that the fee did not and cannot pass under this will, except by the act and co-operation of the executor to whom

the fee is devised, with the power and authority to appropriate the rents and profits to the use of Eliza and Sarah Jane. It is insisted that the application of the doctrine arising under the statute of uses, cannot be called in to aid the complainants. Speaking with reference to general principles, this is true. If there is any active duty imposed upon the devisee of the legal estate in carrying out the purposes of the devise in favor of the *cestui que use,* which requires him to be vested with the legal estate, it becomes a trust to her, and the *cestui que use* is, in modern language, a *cestui que trust,* the legal seizin and the estate vesting in the trustee. *2 Wash. on Real Prop. 434; 2 Jar. on Wills 148.* Whether the present case is within this rule or not, I need not now determine. It being a devise, and not a conveyance by deed, does not prevent the operation of the statute. *2 Wash. on Real Prop. 433; 1 Green. Cruise 336; Hance* v. *West, 3 Vr. 233.* But to proceed to more certain ground:

It is also insisted that the title is so placed by the peculiar phraseology of the will as to bar the complainants from every right under the doctrine of election. In other words, it is said that the complainants have no such interest in this land under the will as entitles them to say they will take the land itself, out of which the proposed legacies are to be raised by sale, rather than the legacies themselves. Since I have concluded that the whole estate or interest in the land passes to Sarah Jane after her mother's death, it is not necessary for me to decide the interesting question whether the complainants could elect to take the land during their lives, and so resist effectually a sale, or not, during that period. Can the complainants take the land and so prevent the executor from selling it at any time is, I think, the question in this case.

In my judgment this question should be answered in the affirmative. The right to elect, when a proper case arises, is not questioned. *Fletcher* v. *Ashburner, 1 Lead. Cas. Eq. 1118; Fluke* v. *Fluke, 1 C. E. Gr. 480; Current* v. *Current, 3 Stock. 186; Scudder* v. *Stout, 2 Stock. 377; Craig* v. *Leslie, 3 Wheat. 563.* But it is virtually claimed that the right of election, in all cases, springs from the doctrine of equitable conversion, and

that there can be no election here because there has been no·
equitable conversion. This contention is made upon what
seems to be a well-settled rule—that there is no equitable
conversion in such cases, unless the order or direction to·
sell, and thereby convert, be inoperative or out and out, which
has not been done by the testator in this instance, he only hav-
ing ordered the sale to be made by and with the consent of the
executors "if they think proper." I recognize this doctrine
in all its length and breadth. The heir-at-law can claim its
protection. A devisee would perhaps enjoy the benefit of it
over and above a legatee. But I can find no case in which the
court has allowed the person to whom the land has been devised
in trust, for the use and benefit of others, with a power of sale
for their benefit, to defeat the right of election, because the doc-
trine of equitable conversion could not be applied. It would be
a strange doctrine to hold, in such case, that the legatee could
not take the land. If such be the law, then, in every case like
the present, the trustee can defeat the plainest intentions of the
testator. This case affords an apt illustration of the severity, if
not the absurdity, of the rule sought to be applied. For exam-
ple, had Sarah Jane died before reaching the age of maturity
or without issue, this trustee could have prevented a distribution
of the estate amongst his own children, by saying that they were
only entitled to the proceeds of sale, and that there could be no
sale unless he saw fit to make it, and that he did not see fit to·
make it.

But the executor sees fit to sell. He sees fit to convert. Now,.
therefore, if he be allowed to sell and to convert, who is entitled to·
the proceeds? Eliza and Sarah Jane are entitled during the life
of Eliza, and Sarah Jane to the fund upon the death of Eliza.
It seems clear to me that in such case the rule which allows a.
legatee to take the land instead of the money arising from the
sale applies. It is said that, since the legatee, if she desires the
land, can take the money and buy the land, the courts will not·
oblige her to pursue that useless and expensive form, but will
give her the land at once. This, I think, is a most reasonable

and commendable rule.   I conclude that it should be applied to this case.

Again, it is urged by way of objection, that the legatee is a married woman and cannot elect.   I cannot understand why she cannot accept what the testator gives; but if she be under any such disability, in my judgment, a court of equity can, when called upon, give the necessary aid and protect her interests.

I think the complainants are entitled to the relief sought for by their bill, and will so advise.