Dutton v. Pugh.

ROWLAND J. DUTTON, surviving executor of Rowland Jones, deceased,

v.

CHARLES PUGH et al.

1. Where, by a will, land is imperatively ordered to be sold, without a time being fixed for the sale, it is considered as converted into money from the death of the testator, and gifts of such moneys are to be treated as legacies of personal property.

2. Where a testator orders and directs that, after the death of his widow, his residuary estate is "to be divided and devised as follows," and then says: "I give $1,200" to three persons, named, "to be equally divided between them and the survivors and survivor of them," and "I give and bequeath" to three other persons, named, "the sum of $300, to be equally divided between them and the survivors and survivor of them," and "the residue of my estate * * * I give and devise" to twenty-four persons, named, "to be equally divided between them and the survivors and survivor of them. It being one of the conditions of this devise, if any of the devisees named should be indebted to me, the principal amount of said debt to be deducted from his or her share, and said deduction to be made without regard to the date thereof," he having previously, in his will, given legacies to be paid to survivors "at the time of distribution."—Held, that, in the disposition of the residuary estate, wherever the term "survivors and survivor" is used, it refers to survivors at the time of the distribution of that residuary estate, that is, at the death of the testator's widow.

On bill for construction of a will.

Mr. Howard Flanders, for the complainant.

Mr. Mark R. Sooy, for the defendant, Rowland Jones, Jr., and other surviving nephews and nieces of the testator.

Mr. M. P. Grey, for the defendants, Charles Pugh and others, representatives of nephews and nieces who survived the testator, but who predeceased his widow.

Mr. Samuel W. Beldon, for Edwin H. Jones and others, defendants in similar position to those represented by Mr. Grey.

The Chancellor.

Rowland Jones, a resident of the city of Burlington, in this State, died on the 19th day of August, 1867, having, before then, on the 15th of February, 1865, made his will, by which, after directing the payment of his debts and giving to his wife legacies of some household goods and moneys, he, by the third paragraph thereof, devised to Rowland Jones Dutton certain real estate on High street, in Burlington, upon condition that he should pay for the use and benefit of the testator's wife, during her life, the yearly sum of $250, providing that if he, Rowland Jones Dutton, should predecease the testator's wife, the devise to him should be "null and void," and that the testator's executors should then sell the real estate so devised, and after deducting at least $4,500 for the testator's residuary estate, pay the residue "to the surviving children or child of said Rowland Jones Dutton, but if there should be no child living *at the time of the distribution*, then the amount to be added to my residuary estate."

The fourth paragraph of the will then follows in this language:

"4. I give and bequeath to my kinsman, Thomas Garrett, of Burlington, fifteen shares of the Delaware Fire Insurance Company standing in the name of Sarah Sharpless, my late wife, Sarah Sharpless Jones, in trust, to collect the interest or dividends accruing thereon until the youngest living child of my daughter, Sarah Sharpless Hughes, deceased, shall arrive at the age of twenty-one years, and then sell the same and divide the principal amount and dividends or interest received, equally among the surviving children or child *living at the time of the distribution.*"

By the fifth paragraph of the will a bequest was made in favor of John Hugg.

By the sixth and seventh paragraphs the executors were directed to convert the residue of the estate into money and invest that money. The language of the direction to sell is:

"I direct my executors, or the survivor or survivors of them, to sell the residue of my estate at public or private sale, in such way and manner and on such terms and conditions as they or he may deem proper and best, and to

execute and deliver deeds for said real estate to the purchaser or purchasers thereof."

By the eighth paragraph $1,500 of the income of the residue of the estate is given to the testator's widow during her life. (By a codicil to the will, executed on the 27th day of April, 1866, this annuity was increased to the entire income).

The will then continues in the following language:

"9. After the decease of my said wife, any part of the income remaining unpaid to her is to be added to my residuary estate, which I order and direct to be divided and devised as follows:

"10. I give to William R. Dutton, Sarah Dutton and Mary Allen, children of my late nephew, Thomas Dutton, deceased, the sum of $1,200, to be equally divided between them and the survivors and survivor of them.

"11. I give and bequeath to Charles Dutton, Hannah Dutton and Thomas Dutton, children of my late nephew, Thomas Dutton, deceased, the sum of $300, to be equally divided between them and the survivors and survivor of them.

"12. The residue of my estate, after paying taxes, charges, expenses and commissions &c., I give and devise to my nephews and nieces as follows" [here twenty-four persons are named], "to be equally divided between them and the survivors and survivor of them. It being one of the conditions of this devise, if any of the devisees named should be indebted to me, the principal amount of said debt to be deducted from his or her share, and said deduction to be made without regard to the date thereof."

Lastly, executors were appointed.

The testator's widow died on the 19th day of December, 1887. When the testator died all the beneficiaries mentioned in paragraphs ten, eleven and twelve of the will were living. Prior to the death of the widow one of the beneficiaries mentioned in paragraph ten, all the beneficiaries mentioned in paragraph eleven, and fourteen of the twenty-four beneficiaries mentioned in paragraph twelve, had died.

The direction to the executors to sell the residue of the testator's land is positive. They are allowed full discretion as to the manner of sale, and are not limited as to the time of making it. Under such circumstances the land must be considered as converted into money from the death of the testator.

"When land," said Chancellor Zabriskie, in Cook v. Cook, 5 C. E. Gr. 375, 377, "is directed to be sold, absolutely and

positively, without any time fixed for the sale, it is considered as converted into money from the death of the testator; but for this, the direction must be imperative. If it is optional with the executor whether to sell or not to sell, or if it is only an authority to sell without any direction, then the land retains its character as land until it is actually sold. If the direction of the will as to the proceeds require a sale, it is equivalent to a positive direction to sell, and the land is deemed personal property from the death of the testator."

Gifts of such moneys are treated as legacies of personal estate. *Scudder* v. *Vanarsdale, 2 Beas. 109.*

By the ninth paragraph of the will the testator directs that his residuary estate shall be " divided and devised " as indicated in the three succeeding paragraphs.

By the tenth paragraph he *gives* $1,200, by the eleventh paragraph he *gives and bequeaths* $300, and by the twelfth paragraph he *gives and devises* the residue of his residuary estate.

I do not think that the use of the word "devise" in these paragraphs, which treat of the disposition of the residue of the estate, manifests an intention in conflict with the rule above adverted to. Whenever that word is used, it is coupled with another word suited to the disposition of personalty, evidencing thereby an intention that, whatever the species of property dealt with might be, whether realty or personalty, there would be an apt word to transfer it. It was probably the testator's belief that, when the conversion of his realty had actually taken place, the character of the property, for all purposes, would remain unchanged. In the distribution, then, of this estate the residue is to be considered as personal property.

The principal, and indeed the only, question contested at the argument was, whether the interests of the beneficiaries under the tenth, eleventh and twelfth paragraphs vested at the death of the testator or at the period of distribution, *i. e.* the death of the widow, or, in other form, whether the words " and the survivors and survivor of them," as used in the paragraphs last mentioned, refer to the survivors at the testator's death or to the survivors at the period of distribution.

In *Van Tilburgh* v. *Hollinshead, 1 McCart. 32,* decided in this court in 1861, a testator, who died in 1812, devised certain real estate to his son William, and directed that "at the decease of my son William, I will that his said part of my landed property be given to his surviving children according to law." The son, William, died in 1860, leaving two children, a son and a daughter. By the law regulating the descent of real estate, in force at the testator's death, the son would take two shares and the daughter one share, while by the statute in force at William's death the children would take equally. Chancellor Green, in that case, said (*p. 35*): "Whether the estate is to be divided according to the law as it existed at the death of the testator or at the death of the devisee for life, depends upon the question, whether the estate of the devisees in remainder is vested or contingent. If their estates vested upon the death of the testator, no subsequent change of the law could alter them. If they remained contingent upon the death of the devisee for life, the law as it then stood must regulate the decision. * * * The rule is, that where an interest is given to one for life, and after his death to his surviving children, those only can take who are alive at the time the distribution takes place. * * * The estates of the children being contingent, and not vesting until the death of the devisee for life, they must take their shares 'according to law' as it then was. They will consequently take each an equal share of the estate."

This case was followed in 1872 by the case of *Slack* v. *Bird, 8 C. E. Gr. 238,* in which the will devised to Slack and Page a house and lot in trust for the use of M. C., R. L. and W. S. L. during their natural lives, and directed that, upon the death of the survivor of those three persons, the trustees should dispose of the house and lot, and divide the proceeds equally among the surviving children of R. L. and W. S. L., who were husband and wife. When the will was made, and at the death of the testator, R. L. and W. S. L. had four children. When R. L., the survivor of the three life-tenants, died, three of these children were living, the fourth having died before R. L., leaving a child. The children who survived R. L. claimed the entire proceeds of sale, and the guardian of the child of the deceased child claimed

one-fourth of the proceeds of sale. The solution of the question depended upon the determination whether the word "surviving," as used in the clause "surviving children of R. L. and W. S. L.," related to the death of the testator or to the period of distribution. After reference to numerous conflicting decisions, and among them to the then more recent English cases which hold that the word "survivors" refers to the survivors at the time of distribution, Chancellor Zabriskie said (p. 241): "Were these cases the only guide, I should be much inclined to follow the later English decisions, not only on the ground that they have the clear weight of authority, but because they are more consistent with the rules of construction and with the plain, natural and ordinary import of the language. * * * But I am not at liberty to decide this matter according to my own conclusion as to the weight of conflicting authorities, or the strength of the reasoning upon which they are respectively founded. The question has been adjudicated in this court by a decision which has been suffered to stand for years as the law of this court, and which I am not at liberty to disregard; or if at all, only for reasons far more cogent than exist here." The chancellor then refers to the case of *Van Tilburgh* v. *Hollinshead,* and decides that the word "survivors," in the case before him, refers to the period of distribution.

These two cases have established a rule of construction in this court that must control this case, unless, upon taking the whole will into consideration, the testator's intention that the words indicated shall be taken in another sense plainly appears. The cardinal rule of testamentary construction is, that the testator's real intention, gathered from the entire will, shall govern the interpretation of that instrument, and all subordinate rules, which fix a meaning to forms of expression, must yield to that intention.

In *Post* v. *Herbert, 12 C. E. Gr. 540, 543,* Chief-Justice Beasley, in speaking of such a subordinate rule of construction, says, that it is a " mere judicial exposition of the natural meaning of a certain form of expression. It is not an artificial contrivance, which, when present, is to have a supreme effect, but is

a rule simply because the phrases in question, considered intrin-
sically, and without qualification *ab extra*, import a definite
testamentary purpose.   The phraseology has received its accepted
interpretation, because it is supposed that such interpretation will
carry out the view of the testator.   The consequence is, the rule
is always subject to be modified or abrogated by the conditions
of the case to which it is applied."

I shall be bound, then, in this case, to decide that the words
"and the survivors and survivor of them," as used in the will be-
fore me, refer to the period of distribution, unless the intention
of the testator to the contrary plainly appears.

It is argued that such contrary intention does appear, *first,*
from the fact that the residuary estate is disposed of by words in
the present tense, such as " I give," "I give and bequeath," and
"I give and devise," followed by the names of the individual
beneficiaries, the words "after the decease of my said wife," in
the ninth paragraph, relating solely to the time when unpaid an-
nuities shall fall into the residuary estate, and not restraining
the natural signification of the present words of gift.   And
*second,* from the provision at the end of paragraph twelve that,
if any legatee in that paragraph named should be indebted to
the testator, the amount of such indebtedness should be de-
ducted "from his or her share," without regard to the date of
the deduction, which must be construed to recognize the owner-
ship of a share at a time antedating the period at which the debt
shall be deducted, that is, before the payment of the share.   And
*third,* from the fact that, in the third and fourth paragraphs of
the will, the testator refers expressly to the survivors at the time
of distribution, thereby indicating that when he intended sur-
vivors at distribution he said so, and that his failure to say so in
the tenth, eleventh and twelfth paragraphs evinces an intention
that the survivors there contemplated were survivors at the time
from which the will speaks, that is, the testator's death.

As to the first of these contentions.   The ninth paragraph pro-
vides a time at which the residuary estate is to be completed.
The language is: "After the decease of my said wife, any part
of the income remaining unpaid to her is to be added to my

Dutton v. Pugh.

residuary estate, which I order and direct to be divided and devised as follows." Then, in the tenth, eleventh and twelfth paragraphs, follows the specification of the dividing and devising intended in the present words upon which this contention is based. It is plain from the use of the words "as follows," at the end of the ninth paragraph, that that which follows that paragraph is mere specification under the general direction there given. That general direction is, that the residuary estate, then to be completed, is "to be" divided and devised. The testator evidently contemplated a future division and a future taking effect of his gifts of the divided parts of his residuary estate. I think that the last clause of paragraph nine is elliptical, and that after supplying the omitted words it should read as follows: "Which" residuary estate "I order and direct to be [then] divided and devised as follows."

I fail to appreciate the force of the second matter suggested as indicative of the testator's intention. The taking by the several persons named in the twelfth paragraph was unquestionably contingent, either upon his or her surviving the death of the testator or upon his or her surviving the period of distribution. One or more of the beneficiaries indebted to the testator might die before the happening of either contingency, and then no deduction could be made. The provision that the deduction shall be made without regard to its date, is suggestive of a deduction in the future, and was probably made because that future might be after the statute of limitations had barred recovery of the debt, the testator desiring that the debt should be deducted even though it might not be recoverable by suit at law. As to whether that future was to be after his death or after the death of both himself and his wife, is not indicated. The suggestion that the words "from his or her share" recognize ownership of a share, is answered by simply turning to the preceding clause limiting the taking to survivorship, with which those words must be reconciled. The only reconciliation between the clauses is, to take the words "from his or her share" to be descriptive of the contingent share that any one of the persons there named might take.

28

Dutton *v.* Pugh.

I do not think that it can be fairly inferred from the express reference of survivorship, in the third and fourth paragraphs, to the period of distribution, that the testator intended a different time of survivorship in the tenth, eleventh and twelfth paragraphs. The natural inference would seem rather to be, that the testator appreciated that there were two periods at which there might be survivorship, and that he expressly mentioned the period he intended in the third and fourth paragraphs, because he thought that in those paragraphs there might be a question as to which period was intended, and he did not expressly define the period in the tenth, eleventh and twelfth paragraphs, because he thought that his intention there was plain, and not that it differed, as to the period of survivorship, from that which he had previously expressed with reference to other bequests. In this connection my attention has been called to that part of the case of *Newton* v. *Ayscough, 19 Ves. 534, 536,* in which Sir William Grant, in distinguishing the case of *Perry* v. *Woods, 3 Ves. 204,* from the case then before him, said : "In *Perry* v. *Woods* ·the testator had, by his will, furnished evidence of his own intention with regard to the meaning of the word 'survivor.' Where he meant the survivorship to refer to the death of the tenant for life, he expressly declared that intention in two instances; and the omission of that reference in another instance is an indication of a different intention."

In *Perry* v. *Woods* £1,500 were given in trust for one life, and then for another for life, and then to be transferred to three persons, W., J. and A., "in equal shares and proportions, and to the survivor or survivors of them, who shall be living at their decease," and another £1,500 to E. O. for life, and after her decease, to W., J. and A., above mentioned, "and to the survivor and survivors of them, who shall be living at her decease," and then £1,500 to A. for life, and at her death to her children, but if she should die and leave no child or children, then to W. and J. above mentioned, "share and share alike, or to the survivor of them."

In that case Sir Richard Pepper Arden held that W. and J. were tenants in common at the testator's death, and that the

Dutton *v.* Pugh.

words "or to the survivor of them" were inserted for no "other purpose than to prevent a lapse in case any of the parties should die before the testator." The decision of the case was put upon the rule claimed to have been established in *Stringer* v. *Philips, 1 P. Wms. 97 n.,* where £100 were given to two for life, and then to four, " to be equally divided between them and the survivors and survivor of them," and the four were held to be tenants in common, the words "survivors and survivor of them" referring to the testator's death. The view taken by Sir William Grant does not appear to have been considered in the decision of the case, and, although entitled to great respect, has not the authority of a deliberate adjudication after argument.

In the case before me the disposition of the residuary estate is not so similar in character with the provisions of the fourth and fifth paragraphs, or so connected in scheme with those paragraphs, as were the three bequests in *Perry* v. *Woods,* as to be affected by the forms of expression in them. It is rather a separate, independent project of its own kind. The only inference I can draw from the express specification of the time to which the survivorship shall relate in paragraphs three and four, and the omission of such specification in the disposition of the residuary estate is, that in those paragraphs the testator deemed it necessary to state it, while, in the disposition of the residuary estate, he thought that his language was sufficiently clear to indicate his intention.

I find nothing in the will to take this case out of the rule laid down in *Van Tilburgh* v. *Hollinshead* and in *Slack* v. *Bird,* above referred to, and therefore must direct the executor that that rule determines the persons to whom the residuary estate of Rowland Jones must be distributed.