EDWIN A. JONES et al., appellants,

*v.*

ROWLAND JONES, JR., et al., assignees &c., respondents.

On appeal from a decree of the chancellor, whose opinion is reported in *Dutton* v. *Pugh, 18 Stew. Eq. 426.*

*Mr. Samuel W. Beldon,* for the appellants.

*Mr. Mark R. Sooy,* for the respondents.

The decree below was affirmed, for the reasons given by the chancellor.

DIXON J. (dissenting) delivered the following opinion:

The decision of this cause depends upon the meaning of the will of Rowland Jones, deceased, and particularly its ninth, tenth, eleventh and twelfth paragraphs, which read as follows:

"9. After the decease of my said wife, any part of the annuity" [given to her in prior clauses of the will] "remaining unpaid to her, is to be added to my residuary estate, which I order to be divided and devised as follows:

"10. I give to W., S. and M., children of my late nephew, T. D., the sum of twelve hundred dollars, to be equally divided between them and the survivors or survivor of them.

"11. I give and bequeath to C., H. and T., children of my late nephew, T. D., the sum of three hundred dollars, to be equally divided between them and. the survivors and survivor of them.

"12. The residue of my estate, after paying taxes, charges, expenses and commissions &c., I give and devise to my nieces and nephews as follows" [here follow the names of twenty-four persons]: "to be equally divided between them and the survivors and survivor of them.  It being one of the conditions of this devise, if any of the devisees named should be indebted to me, the principal amount of said debt to be deducted from his or her share, and said. deduction to be made without regard to the date thereof."

The precise question for decision is, whether, of the persons named in these paragraphs, those took who were living at the testator's death, or only those who survived his widow ; in other words, whether the legacies became vested at the death of the testator, or were contingent during the widow's life.

The learned chancellor adopted the latter view, deeming himself bound to do so by the judgments in *Van Tilburgh* v. *Hollinshead, 1 McCart. 32,* and *Slack* v. *Bird, 8 C. E. Gr. 238.* Those judgments were rendered upon wills in which the words of gift, as distinguished from words directing payment only, related to the period of distribution, and the learned chancellor construed the language of the present will as being to the same effect. But his doubt with regard to that construction is manifested by his statement that the ninth paragraph is elliptical, and should be read as though the word " then " were inserted before the words "to be divided and devised," so as to refer the devise itself to the widow's death. It scarcely needs to be remarked, that any interpretation of a will which requires the use of words not employed by the testator, is to be received with suspicion. I think that, without the addition of words, this will expresses definite purposes entirely in accord with established legal rules.

The general policy of the law and the recognized rules of interpretation require that legacies in all cases, unless clearly inconsistent with the intention of the testator, should be held to be vested, rather than contingent. Where no future time is specified in the bequest, or where the time specified is annexed to the payment only, the legacy vests immediately on the death of the testator ; it is a present gift. *Wms. Exrs. 1224; Neilson* v. *Bishop, 18 Stew. Eq. 473.* And even though the future time is annexed to the gift itself, yet, if it appears that the gift is postponed only to let in some other interest, still the gift is vested, although the enjoyment is postponed. *Post* v. *Herbert's Executors, 12 C. E. Gr. 540.*

Under these rules the interpretation of the recited paragraphs seems plain. The only mention of a future time is in the ninth paragraph, and there it is annexed, not to the gifts, not expressly even to the payment of the gifts, but merely to the

increasing of the residue, by adding the unpaid portion of the widow's annuity, after her decease. That the testator did not retain in his thoughts this future event, the death of his wife, as entering into the disposition of his residuary estate, is shown by the fact that he forthwith disposed of that residue by words signifying the present time, " I give," " I give and bequeath," "I give and devise," words which, in legal contemplation, refer to the testator's death. These expressions in the tenth, eleventh and twelfth paragraphs, are the testator's own interpretation of the final clause of the ninth paragraph, " my residuary estate, which I order to be divided and devised as follows," and indicate that, if he attached any distinct idea to the words "to be divided" in that clause coupled with the word "devised," the idea was not that of the actual distribution of the residue, but was its allotment into shares, which was to be made at the death of the testator, when testamentary gifts, bequests and devises go into operation. The postponement of the actual distribution of the residue until the widow's death, not expressly ordered by the testator, but only implied from his other testamentary designs, does not in the least militate against this construction, for there is no incongruity in the immediate gift of a dividend in a fund hereafter to be ascertained and distributed. For this postponement, there is no other conceivable reason than the convenience of the estate, to secure to the widow, through the instrumentality of the executors, the annuity which the testator intended for her support. So that, had the postponement been annexed to the gift itself, instead of to the distribution only, the legacy would still be vested, according to *Post* v. *Herbert's Executors, 12 C. E. Gr. 540.* Gathering the intention of the testator then from the language thus far considered merely, I think the legacies vested at the testator's death.

But the like intention becomes plainer under the application of another and more general rule, that the construction of a will is to be based upon the entire instrument, interpreting its parts with reference to each other, so that all the testator's purposes may have effect.

In the third paragraph of this will, some real estate is devised to D., his heirs and assigns, subject to an annuity to the testator's widow, with a proviso that if D. die before the widow the devise is to be null and void, the executors are to sell the real estate and pay a part of the proceeds to the surviving children or child of D.; " but if there should be no child living at the time of distribution, then the amount to be added to my residuary estate." In the fourth paragraph, the will bequeaths fifteen shares of stock to G. in trust to collect the dividends until the youngest child of his daughter Sarah shall arrive at the age of twenty-one years, and then to sell the same and divide the proceeds " equally among the surviving children or child living at the time of distribution."

These paragraphs show that the attention of the testator or his draftsman was distinctly called to the idea that survivorship among the legatees might be referable to the period of distribution as well as to some other period, and they also indicate, that when he meant it to be so referred he would in terms say so. The learned chancellor suggests that the testator expressly mentioned the period he intended in the third and fourth paragraphs, because he thought that in those paragraphs there might be question as to which period was intended, and he did not expressly define the period in the tenth, eleventh and twelfth paragraphs, because he thought that his intention there was plain. But to an intelligent draftsman, the very opposite was evident; for, without mention of the time of distribution, the bequests in paragraphs 3 and 4 exactly correspond with that in *Slack* v. *Bird, 8 C. E. Gr. 238,* where the period of distribution was implied. In that bequest, as in these, there was no gift except in the direction to pay or divide, and the division was to be among survivors only. With that case, or any similar case, before him, what sensible reason could the draftsman have had for denoting in words the same period as the law would imply, except to indicate that when he meant that period he would distinctly name it ? By not mentioning it in paragraphs 10, 11 and 12, he has given ground for the strongest inference that he did not intend it. So thought Lord Alvanley, in *Perry*

v. *Woods, 3 Ves. 204,* and Sir William Grant, in *Newton* v. *Ayscough, 19 Ves. 537,* with regard to a similar turn of expression, and such is a common rule of construction, that a marked change in phraseology evinces a change in design.

What, then, was the design of the testator in giving the residuary legacies to the persons named and their *survivors?* Only two can be surmised—one, to define by survivorship the nature of their interests; the other, to prevent a lapse, by securing the entire fund to those who should outlive him.

A gift to several and their survivors, standing alone, would create a joint tenancy; but when the words of gift show that the recipients are to take in shares, or by division, or unequally, then they do not become joint tenants, they are not collectively entitled to the whole, but each to his separable interest. *Post* v. *Herbert's Executors, 12 C. E. Gr. 540.* Under paragraphs 10, 11 and 12 the funds are to be divided among the legatees, and consequently survivorship does not here indicate joint tenancy. The only other supposable design was to prevent a lapse. Such was the purpose of the testator. He was disposing of the residue of his estate, and doubtless meant the disposition to be complete. Among so many legatees some were likely to die before him, and, therefore, without the words of survivorship, his intention would probably be thwarted; with them, his desire was certain of accomplishment.

The last clause in the twelfth paragraph of the will affords another reason for assigning survivorship, in that paragraph at least, to the death of the testator, rather than the period of distribution. It directs that the principal of any debt owed to the testator by any of the legatees shall be deducted from his share without regard to the date of deduction.

This clause would, I apprehend, prevent the executors from recovering from any legatee a debt owing to the testator, up to the amount of his share, so long as there was a possibility that the debt would be satisfied by the legacy. No deduction could, however, be made until the share vested. If the shares vested at the testator's death, the deduction could then be made from the shares of living debtors, no matter how long the debts had

Jones v. Jones.

'been standing'; while if any person named as a legatee were then dead, the executors could at once proceed to collect the debt owed by him, unless the testator had himself permitted the lapse of time to bar it. But if the shares were contingent until the period of distribution, then, although the testator had restrained his executors from bringing suit against these legatees for their debts, yet the statute of limitations would continue to run in favor of the debtors, and if, by reason of their death before the period of distribution arrived, their shares never vested in them, the debts might be wholly lost to the estate. Thus, these legatees, for whom the testator appears to have had an equal regard, would, by this contingency created by implication, be divided into four classes—*first*, those who are indebted to the testator and die before their debts are outlawed and before distribution; *second*, those who are indebted to the testator and die after their debts are outlawed and before distribution; *third*, those who are not indebted and die before distribution; and, *fourth*, those who survive the period of distribution. The first and third classes would receive no benefit under the will; the second would be benefited to the extent of their debts, not exceeding the amount of their prospective shares; the fourth would receive their shares. It seems safe to say, that such a result was not within the contemplation of the testator. It is extremely improbable that he intended to hold in abeyance, until his widow's death, the question whether these legatees should be charged with their indebtedness to his estate.

Upon the whole will I think it quite plain, that those persons named in the tenth, eleventh and twelfth paragraphs who survived the testator, took at once each a separable vested interest in the fund bequeathed to them, and, therefore, in my judgment, the decree below should be reversed.

*For affirmance*—THE CHIEF-JUSTICE, DEPUE, MAGIE, VAN SYCKEL, BROWN, CLEMENT, WHITAKER—7.

*For reversal*—DIXON, GARRISON, COLE, SMITH—4.