W. EUGENE TURTON, complainant-respondent,

*v.*

CHARLES B. GRANT et al., defendants-appellants.

[Argued December 1st, 1915. Decided June 19th, 1916.]

1. Where a trustee in executing his trust makes advances proper to be made, he has a lien on the trust estate for repayment which is prior to any encumbrance imposed thereon by the beneficiary.

2. A trustee may enforce such a lien in a court of equity where an accounting may be taken of his advances, his lien established and enforced, and the sale of the trust estate decreed to satisfy the lien, preserving so much of the trust fund as may be entitled to priority over the trustee's advances.

On appeal from a decree of the court of chancery.

*Messrs. Scharringhausen & Hartpence* and *Mr. Frank E. Bradner,* for the appellants.

*Messrs. McCarter & English,* for the respondent.

The opinion of the court was delivered by

BERGEN, J.

The bill of complaint avers that the owner of a parcel of land began the erection of four buildings thereon and after partial construction became financially embarrassed and unable either to finish the buildings or to pay debts contracted for the work done, thereupon the creditors, contractors for different parts of the construction, made an arrangement with the owner that the land be conveyed to the complainant, which was done. At the time of the transfer of the title there were mortgages on each lot upon which the buildings were located, three for $4,000 each, and one for $4,500, on account of which advances had been made so that but $8,900 remained to be paid by the mortgagee. The three mortgages of $4,000 were subsequently canceled and others given by the complainant in their stead for $4,200 each, thus increasing the amount received by complainant on account of the mortgages to $9,500, out of which $200 was paid with consent of the creditors, to the owner as a consideration for the conveyance.

By a writing, executed by all the beneficiaries and the complainant, the trust upon which the complainant held the property was declared to be

"that the party of the first part [the complainant] will take title to said premises for the parties of the second part [the creditors]; he to complete said buildings and dispose of them at the best possible price and to pay all amounts and claims then due, and shall also pay all expenses in connection with this agreement."

The writing also provided that the creditors would refrain from all legal proceedings to enforce their claims; that they

would aid and assist complainant to complete the buildings; that complainant would make payments as the work progressed, except on account of debts then due, which were waived until after the disposition of the buildings, and that complainant would keep a separate and detailed account of all transactions in connection with the trust.

The bill further avers that in order to collect the money due from the mortgagees, being building and loan associations, it was necessary to advance out of his own funds the dues required; that the money from the mortgages was insufficient to complete the buildings, and complainant paid from his own funds large sums of money necessary for that purpose, and that the creditors as parties to the agreement have a beneficial interest in the property, and that he is entitled to be indemnified by them to the extent to which it may be decreed he is entitled.

The bill further avers that complainant, since the completion of the buildings, has endeavored, but unsuccessfully, because of the condition of the real estate market, to convert the property into cash. The prayer of the bill, as amended, upon which the order appealed from is based, is that an account be taken of his disbursements; that defendants as beneficiaries be decreed to pay the same, and in default that they be foreclosed of all equity of redemption, and that the premises be sold by order of the court, and out of the proceeds complainant be paid his advancements and a reasonable sum for his services as trustee. Two of the creditors moved to strike out the amended bill upon the ground that it fails to disclose any equity; that it does not show that complainant has any such lien on the land as to give the court jurisdiction to take an account, and that complainant has a complete remedy at law. This motion was refused and defendants appeal.

It is first argued, in support of this appeal, that the complainant has no lien because he is in possession of the property against which he asserts the right to a lien. That is, that a trustee holding the title to real estate in trust for others can in no case have a lien on the land to repay himself disbursements made in furtherance of the trust, according to its expressed terms, unless he is out of possession of the land. The authorities cited in sup-

port of appellant's proposition are not applicable to cases where, by the terms of the trust, the trustee is to remain in possession for the purpose of executing the trust. He has the right to retain possession until his legal disbursements are refunded, either by the beneficiaries or from the rents, or until satisfied as the result of equitable proceedings.

Where a trustee properly advances money for which he is entitled to reimbursement, he has a lien as security for the claim "either upon the *corpus* of the trust property, or upon the income, as the case may be." *Pom. Eq. Jur.* § *1085*. The authorities for this proposition are so numerous that it is not necessary to cite them. In the present case, the bill of complaint shows that the trustee was authorized to advance the money for the completion of the buildings, under his agreement with the beneficiaries, and, if so, he is entitled to have it refunded and as security therefor to a lien on the trust property.

The next point is, that complainant is not entitled to a decree for the sale of the land, because he has the power, under the trust agreement, to make sale without the aid of a court of equity. We do not agree with this, for a court of equity has the special oversight of the administration of trusts, and, under the circumstances set out in his bill, the complainant is entitled to have the court take an account of his disbursements and adjudge the amount and extent of his lien against the trust property. He cannot determine the correctness of the account he agreed to keep, nor with safety to himself sell the property to make the amount he may fix. He avers that he is not able to secure a purchaser, which we must assume means subject to the mortgages which are prior liens, at a price sufficient to meet his advances and the sums due the contractors, the enforcement of which were stayed by agreement until after the disposition of the buildings. His power, under the declaration of trust, is to "dispose of them at the best possible price and to pay all amounts and claims then due." This requires him, in case he makes a sale, to pay all who were creditors when he assumed the trust, and he avers that he cannot make a sale for a price which will so far extend as to cover all these debts, and if he made any other sale might render himself liable for any deficiency.

It is urged that the court cannot order a sale because it would amount to a destruction of the trust, which was the situation in *Darke* v. *Williamson, 25 Beav. 622.* But that rule is only applied where there is a continuing trust. In the *Darke Case,* the property had been conveyed to trustees, in 1723, for a Baptist meeting-house, and in making repairs, in 1822, the trustees had incurred a debt which some of the trustees paid, and a bill was filed praying that the debt paid by the trustees be declared to be a lien on the premises, and a decree for foreclosure and sale. The court held that a trustee was entitled to be paid any expenses properly incurred in execution of the trust, but that, in the case under consideration, a sale would work a complete destruction of the trust, and therefore refused a sale, but held that if the owners attempted to sell the property, the holder of the lien should have notice, and if an end was put to the trust, the lien would be enforceable, and, in the meantime, the creditor was entitled to the possession of the title deeds. In the present case, no destruction of the trust can in that sense be said to result from the sale of the property, for the trust by its terms is at an end, except the realization and distribution of the funds, to accomplish which the property must be converted into money. It is not a destruction of the trust, but in execution of it. *In re Pumfrey, 22 Ch. Div. 255,* the trust was a marriage settlement in which Walter Sandell Mappin deposited with trustees a considerable sum upon trust to pay to his intended wife during life the income, and at her death to Mappin during his life, and upon failure of the trust for Mappin, then upon trust for the children of the wife and other persons named. The deed authorized the trustees, upon his or her request, to invest in real estate. Such request was made, and, the trust fund not being sufficient, Mappin agreed to furnish the deficiency, which he failed to do. The trustees borrowed the money, completed the purchase and deposited the deed by way of mortgage. The lender brought suit, claiming he had a lien on the land prior to the trusts contained in the settlement and the right to recover by foreclosure. The court held that the creditor was entitled to whatever right to indemnity the trustee had for the money he had advanced, treating the creditor as an assignee of that right.

It was urged that the trustee could not enforce his lien until the trust for the sale of the purchased estate should again arise, citing *Darke* v. *Williamson*. But the court held the argument unsound, saying: "If the trustee has a right to be indemnified out of the trust estate, there is no reason why he should wait for his money until the trust estate has been turned again into money under the trust." An account was ordered, and the life estate of Mappin, who had agreed to advance the money, was impounded, with liberty to plaintiffs to "apply to realize the lien against the trust estate; but, upon that application, it must be proved to the satisfaction of the court" that Mappin "cannot pay and that every reasonable means of making him pay have been exhausted."

The court also held that if the trustee had a lien he had a right to come into equity to enforce it, and that the lien of the trustee was subject to the trust fund, but it was not considered a destruction of the trust to allow the trustee to enforce his lien against the trust estate. In the case we are considering, the trust estate is the land, subject to certain mortgages which are a prior lien to that of the trustee, the agreed purpose of the trust was the finishing of the buildings for the benefit of creditors, and the trustee having advanced his money in executing the trust, thereby increasing the estate to that extent, has a lien on it next in priority to the mortgages. There was no completed trust estate until made so by the funds of the trustee, the very object of the trust agreement was the creation of an estate by the funds of the complainant, and it would be inequitable to say that the creditor's debts, the security for which had been increased by expenditures made by the trustee at their request, were entitled to priority over the lien of the trustee. There being no trust estate entitled to preservation against the lien of the complainant, he is entitled to enforce it. This right to priority is recognized in *Perrine* v. *Newell, 49 N. J. Eq. 55*, where it is held that mortgages, given by a *cestui que trust* on his beneficial interest, are subject to the trustee's right to repayment of his advances. *In re Exhall Coal Co., 35 Beav. 449*, where the trustee declared that he held a coal mine in trust for the company, and claimed a lien for proper advances of money, it was held that the trustee

*86 N. J. Eq.*　　　　　Turton *v.* Grant.

was entitled to indemnity prior to any charge for payment of debentures issued by the *cestui que trust*. It seems to be settled that where a trustee makes proper advances in executing a trust, he has a lien on the trust estate for repayment, and that such lien is prior to any charges created by the beneficiaries against the estate. In the case under review, the trust was undertaken at the request of the *cestui que trust* for their benefit, and the advances were made in accordance with the trust declared, and practically constitutes the trust estate. In such case the trustee is entitled to a lien upon the *corpus* of the estate therefor, and to enforce it in equity by a decree for the sale of the property in order to wind up the trust as required by its terms. If the proceeds of the sale should produce a surplus beyond that necessary to pay the trustee and the debts due the *cestui que trust,* this profit will have to be disposed of. It does not belong to the trustee, for he can make no profit out of the trust estate, and the trust agreement makes no provision for such a contingency, and, as a court of equity has supervision over the execution of trusts, at least where the power of the trustee to dispose of the results is doubtful, we have no doubt of the jurisdiction of equity to determine the nature and extent of a trustee's lien, and for that purpose to take an account of his advances; to fix the order of its priority, and to decree the sale of the trust property upon equitable terms, preserving so much of the trust estate as may be entitled to priority to the lien, and the disposition of the surplus if the proceeds of the sale exceed the express requirements of the trust.

It is further urged that by the terms of the agreed trust the trustee was not authorized to exceed the amount then to be advanced on account of the mortgages. This is based upon the recitals preceding the declaration of the trust, but assuming them to be a part of the agreement, it is not so clear that the defendants are right as to warrant a dismissal of the bill. It is first recited that there is in the hands of the two building and loan associations $8,900, and in the next paragraph "it would require about" the sum of $5,800 to complete the buildings. Whether it would require the latter sum in addition to money to come from the mortgages, is not free from doubt, but whether

so or not, it was subsequently agreed that the trustee should complete the buildings and pay all amounts then due. If the estimated sum was not sufficient, it was intended that the buildings should be completed, and that was the express terms of the trust. If the buildings were to be completed, someone must furnish the funds, and it was to the interest of the *cestui que trust* to have them completed, and no objection was made to it. We must assume, on the motion to strike out, that the money was properly expended—that is, that there was no waste, whatever the fact may appear to be on final hearing.

The last point argued is, that complainant has a remedy at law by proceeding against the defendants for his advancements. It is not necessary to decide on this motion whether complainant has a legal claim against the defendants, for he has a lien on the property which he is not required to give up—he has a right to first exhaust his lien, and then, if there be a deficiency, to a decree against the defendants, if they are liable, for the unpaid balance.

The order appealed from will be affirmed, with costs.

PARKER, J. (concurring).

I agree that the court of chancery properly refused to dismiss the bill, but put my vote for affirmance upon the grounds that complainant as a trustee was entitled to a lien upon the trust estate for moneys properly advanced by him in the execution of his trust; and was entitled to an account under the supervision of a court of equity to have the amount of those advances ascertained and to have them declared a lien on the property. This is all that it is necessary to decide in order to uphold the bill as against a general demurrer or a motion to strike it out *in toto*.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR—13.

*For reversal*—None.