The bill of complaint seeks instruction with reference to various questions which have arisen in connection with the estate of Jennie Cramer, who died testate on August 3d 1930.
Under the terms of Mrs. Cramer's will legacies in a total sum of $3,600 were created. She charged her real estate with the payment of debts, administration expenses and legacies and devised the fee of certain real estate to her five surviving children as residuary legatees. Her personalty consisted of a bank account of approximately $88 which was, of course, insufficient to pay debts, legacies, c. The real estate consisted of two properties, numbers 5 and 11 Haddon Avenue, Camden, New Jersey, appraised for inheritance tax purposes at $21,000. The will provided that the real estate was "to be held for awhile for best possible price or rather not sold immediately in order to close my estate hurriedly."
After testatrix' death the executors named in her will, a daughter and a son, renounced, and the Camden Safe Deposit and Trust Company, hereinafter called Camden Safe, with the consent of the five children, was appointed administrator cum testamentoannexo. This was accomplished in order that the five children might the better conduct arrangements for the handling of the real estate, as hereinafter recited.
It is apparent that the five children, devisees of the real estate, and Camden Safe, investigated the financial condition of the estate and determined that the amount necessary to pay all debts, legacies, administration expenses and other charges against the estate would be a figure slightly less than $7,500, of which $3,550 represented debts, administration charges, c., and $3,600 represented legacies. With these figures in mind the five children and the Camden Safe met and on September 4th, 1930, certain written instruments were executed to carry into effect an agreement which had been reached between the parties thereto. The children executed a deed vesting title to the Haddon Avenue properties in the Camden Safe. Camden Safe executed to the children a declaration of trust setting forth the trusts under which it took title. The children executed to Camden Safe *Page 429 
a promissory note for $7,500 and as collateral security for the payment thereof executed to Camden Safe an assignment of all their interest under the declaration of trust and the property, which was the subject-matter thereof. The children also signed an authorization for Camden Safe to pay to itself as administratorcum testamento annexo the proceeds of the $7,500 loan aforesaid, represented by the promissory note signed by the children, payable "at such time and in such amounts as Camden Safe, administrator cum testamento annexo may request."
We now turn to the declaration of trust and find that the purpose of the loan of $7,500 on the note aforesaid to have been in order that the five children might be supplied with the funds necessary for the payment of "taxes, administration expenses, debts and legacies, without the sale of" the Haddon Avenue real estate.
We start out, then, with Camden Safe, administrator, in position to call upon Camden Safe, a banking corporation, for the funds necessary to clear the title to the real estate from all liens against it for testatrix' debts, legacies or otherwise. In pursuance of the expressed agreement between these children devisees and Camden Safe, a banking corporation, Camden Safe as administrator secured from Camden Safe, a banking corporation, $3,550 and paid out these funds in that amount between September 22d 1930, and June 24th, 1931. This sum paid all debts owed by decedent, taxes on real estate and administration expenses as of these dates. The administrator did not pay the legacies of $3,600 or any part thereof but, on the contrary, at some time either on June 21st, 1931, or thereafter, Camden Safe, a banking corporation, advised the five children that it did not intend to make further advances on the $7,500 note; that the real estate market did not justify further advances. The evidence is that the children did nothing to compel Camden Safe, a banking corporation, to live up to its agreement and make the advancements necessary to pay the legacies. The evidence is that the legatee who has appeared in this suit knew nothing of these transactions. Camden Safe continued to manage the real estate under the trust agreement and still *Page 430 
continues so to do. The real estate market continued to slump and the trustee endeavored to sell the real estate, first for $7,500, then $5,000, then $4,500, then $4,000, and finally has procured a purchaser for one property at $3,000 and believes it may sell the other property at private sale for $2,500, and if not, that it may realize $1,500 therefor at public sale.
In March of 1937 Camden Safe, as trustee, borrowed from itself in its corporate capacity $2,078.05 and purchased a certificate of tax sale from the City of Camden, taxes having been in default, the income from the real estate not having been sufficient to pay them, as a result of which the city had a tax lien which it threatened to foreclose.
On the filing of this bill one Robert W. Cramer, a grandson of testatrix and a legatee under her will in the sum of $1,000, filed a counter-claim seeking the recovery of his legacy. However, prior to the filing of the bill, to wit, on April 9th, 1938, the Federal Deposit Insurance Corporation, hereinafter referred to as F.D.I.C., had taken over the $3,550 note by assignment from Camden Safe, together with the collateral aforesaid (trust agreement). On April 23d 1942, F.D.I.C. demanded that the trustee sell the real estate and apply the proceeds to the $3,550 note.
It thus appears that Camden Safe, a banking corporation, has a note for $2,078.05 (taxes) and F.D.I.C. has a note for $3,550, and the question presented on this phase of the case is the priority as to these two notes and whether the counter-claiming legatee is or is not entitled to be paid the amount of his legacy before or after the payment of these notes, or either of them.
The recitals of the trust agreement aforesaid clearly show that Camden Safe and the five children determined that an early sale of the real estate was not for the best interest of the five children, and while the will provided that the executors were not called upon to sell in order to close the estate "hurriedly," the legatees were entitled to be paid their legacies and the Camden Safe and the five children determined to obviate any difficulty on that score by withholding the real estate from sale to suit their convenience and pay out *Page 431 
of the proceeds of the $7,500 note all taxes due at the time of decedent's death, as well as debts, expenses, c.
The declaration of trust contained recitals to the effect that the real estate largely represented decedent's entire estate; that title to said premises was vested in the settlors by the terms of decedent's will, subject to the payment of taxes, expenses of administration of decedent's estate, her debts and the legacies provided for therein, and that arrangements had been made by the settlors for the payment of said taxes, administration expenses, debts and legacies, without the sale of said real estate.
From the above it is clear that the Camden Safe and the five children treated the two Haddon Avenue properties as real estate which, upon the payment of these legacies, c., would be free and clear of all liens and encumbrances, with the absolute fee in the five children.
A reading of testatrix' will, in view of the character of the estate left by her, discloses that she must have known that it would be absolutely necessary to sell her real estate in order to carry out the provisions of her will. Her personal estate amounted to $88 while her real estate was appraised for inheritance tax purposes at $21,000. In her will she did not perhaps specifically authorize her executors to sell, but impliedly she did. She said that her real estate was "to be held for awhile for best possible price or rather not sold immediately in order to close my estate hurriedly." The necessity for sale is beyond doubt. This blending of an implied direction to sell resulting from the language of the will, plus the necessity for sale, results in a finding that testatrix intended to convert her realty into personalty, at least in so far as was necessary so to do to pay debts, administration expenses, legacies, c. It is elementary that the intention of testatrix to convert realty into personalty can be shown either by a positive direction to sell, an implied direction or by absolute necessity to sell in order to carry out the provisions of the will. 3 Page on Wills 928 §1336; Pedrajas v. Bloomfield Trust Co., 101 N.J. Eq. 105;137 Atl. Rep. 86; affirmed on another point, 101 N.J. Eq. 803;139 Atl. Rep. 18; Damron v. Mast, 121 N.J. Eq. 489; 191 *Page 432 Atl. Rep. 467; In re Barbour, 16 N.J. Mis. R. 104, and to the same effect, White v. Brinkerhoff, 109 N.J. Eq. 553:158 Atl. Rep. 525; Philadelphia Home, c., v. Philadelphia Saving FundSociety, 126 N.J. Eq. 104; 8 Atl. Rep. 2d 193; affirmed,129 N.J. Eq. 243; 19 Atl. Rep. 2d 349; Beck v. Dennis,128 N.J. Eq. 128; 15 Atl. Rep. 2d 457; Daly v. Rogers,132 N.J. Eq. 200; 27 Atl. Rep. 2d 885.
The fact that testatrix gave her executors discretion as to the time of sale does not affect the equitable conversion of her real estate into personalty. 19 Amer. Jur. 4 § 4; 124 A.L.R. 1448;Wurts' Executors, c., v. Page, 19 N.J. Eq. 365; Cook's Ex'r
v. Cook's Adm'r, 20 N.J. Eq. 375; Dutton v. Pugh, 45 N.J. Eq. 426; 18 Atl. Rep. 207; affirmed under Jones v. Jones, 46 N.J. Eq. 554; 21 Atl. Rep. 950; Crane v. Bolles, 49 N.J. Eq. 373;24 Atl. Rep. 237; Albright v. Van Voorhis, 104 Atl. Rep. 27.
Having arrived at the conclusion that there was an equitable conversion, we come to the next phase of the case and note that the beneficiaries under the residuary clause, instead of taking their interest in these lands as personalty, arranged to pay debts, legacies and administration expenses, and treat the land as land, withdrawing it from sale. They conveyed it to Camden Safe and Camden Safe accepted the conveyance under the trust agreement, whereby the trustee was to manage and control the real estate for the cestui and arrange for its sale at a propitious time and turn over to these five children, the residuary legatees, any rents and income prior to the sale, and the proceeds of the ultimate sale. By so doing these beneficiaries accomplished a reconversion of the personalty into real estate. These residuary beneficiaries, as such, were entitled to elect to reconvert. Fluke v. Fluke's Ex'rs, 16 N.J. Eq. 478; Howell v.Tomkins, 42 N.J. Eq. 305; 11 Atl. Rep. 333; Morse v.Hackensack Savings Bank, 47 N.J. Eq. 279; 20 Atl. Rep. 961;Cranstoun v. Westendorf, 91 N.J. Eq. 34; 108 Atl. Rep. 776;Beck v. Dennis, supra.
It is settled that an election to reconvert may be inferred from the conduct of the parties, whose province it is to elect, and that this inference may be drawn from their acts, omissions and their mode of dealing with the property, so that *Page 433 
any act or writing which shows an unequivocal intention to possess the property in its actual state and condition amounts to a valid election and "the intention shown by the act need not be to reconvert; an intention to take the property in its actual condition is enough." Pom. (5th ed.) 515 § 1177. The transactions between the five children and Camden Safe demonstrate an election by the former to reconvert.
A salutary principle of reconversion is that while the beneficiaries have a right to reconvert, they may not, in so doing, impair or discharge the rights of other beneficiaries.Morse v. Hackensack Savings Bank, supra (at p. 285). Hence, when these legatees decided to take the lands as land and not to permit it to be sold and share in the proceeds in accordance with the will, they took the lands with the burden of debts, administration expenses and legacies, and they so recognized, as appears from recitals in the declaration of trust heretofore quoted. They paid debts under an obligation so to do. They were volunteers in this respect, i.e., volunteers as to reconversion, and having reconverted, were in duty bound to secure debts, legacies, c. They are not entitled to reimbursement for the $3,550 paid out for debts, expenses, c., and they now hold the lands subject to the first lien of other beneficiaries for legacies. The result is that the legacies are a prior lien on the real estate and must be paid before either the $3,550 or the $2,078.05 note. The counter-claiming legatee is entitled to interest on his legacy from one year after the death of testatrix.
As to priorities between the F.D.I.C. and Camden Safe, a banking corporation, as heretofore noted, the bank loaned the administrator $3,550 with which the administrator paid debts,c., and the bank subsequently loaned the trustee $2,078.05 "for the purpose of purchasing the tax sale certificate" and subsequently sold to F.D.I.C. the $3,550 note and assigned collateral, i.e., the trust agreement, to F.D.I.C.
The purchase of the tax sale certificate was necessary in order to preserve the trust res. Had the purchase not been made theres would have been sold by the City of Camden and the trustee was and is entitled to be reimbursed by the cestui or out of the trust estate. Reimbursement of this sum *Page 434 
so expended must be made before the trustee may be required to return the trust estate to the cestui or the proceeds of any sale thereof. Turton v. Grant, 86 N.J. Eq. 191;96 Atl. Rep. 993; Villa Site Co. v. Copeland, 91 N.J. Eq. 503;111 Atl. Rep. 39; Equitable Trust Co. v. Swoboda, 113 N.J. Eq. 399;167 Atl. Rep. 525. It constituted a lien prior to the $3,550 note and the advance having been made for the purpose of preserving the res, the trustee is entitled to interest on the amount so advanced at the same rate it was compelled to pay on the $2,078.05 note. 33C.J. 201 § 57; 65 C.J. 728 § 592.
It has been argued that inasmuch as Camden Safe, a corporation, agreed with the five children to loan them $7,500, to be drawn as demanded by Camden Safe, administrator cum testamento annexo, and to be applied by the administrator for the payment of debts, legacies, c., it became the duty of both the Trust Company as a corporation and that company as administrator to actually advance the balance of moneys necessary to pay legacies, and by reason of their failure so to do a cause of action has resulted to the legatees to recover from Camden Safe, either in its corporate or fiduciary capacity, or both. This is under the theory that the contract to loan was for the benefit of the legatees which, in effect, made them parties to it. It is conceded that third party beneficiary contracts are enforceable at the suit of the benefited party and that the agreement to loan the $7,500 comes within the classification of such contracts. See Restatement,Contracts §§ 135 (a) and 138; 12 Amer. Jur. § 277. But the facts in this case show distinctly that there never was advanced on the $7,500 note more than $3,550; that at the time the Trust Company concluded it would not advance the further sum necessary to pay the legacies the legatees were totally unaware of the undertaking of the Trust Company to advance sufficient moneys to pay the legacies, and the five children actually acquiesced in the refusal of the Trust Company so to do, or at least have taken no steps to compel the further advancement for a period of over twelve years, and are therefore in the same position as though they had actually consented to the refusal. There was, therefore, *Page 435 
an actual abandonment of the contract to loan the additional moneys necessary to pay the legacies at a time when the legatees knew nothing of the agreement. The weight of authorities is to the effect that the parties to a contract entered into for the benefit of a third person may rescind, vary or abrogate the contract as they see fit, without the assent of the third party, at any time before the contract is accepted, adopted or acted upon by such third party. Anno. 81 A.L.R. 1292 (h); Anno.53 A.L.R. 178 II; 12 Amer. Jur. § 390; 17 C.J. § 390; Jordan v.Laverty, 53 N.J. Law 15; 20 Atl. Rep. 832; Peoples Bank andTrust Co. v. Weidinger, 73 N.J. Law 433; 64 Atl. Rep. 179;Dufford v. Nowakoski, 126 N.J. Eq. 529; 9 Atl. Rep. 2d302.
In the case of Dufford v. Nowakoski, supra, the Court of Errors and Appeals, in an opinion in 126 N.J. Eq. 529, said:
"A third party beneficiary who is a stranger to the agreement and also to the consideration is, in this situation, without standing in court to enforce any trust set up therein in his behalf. Crowell v. Hospital of St. Barnabas, 27 N.J. Eq. 650,654. Although there is weighty authority in support of the view that a donee beneficiary acquires an indefeasible right immediately upon the making of the contract for his benefit and that, hence, the contract may not be extinguished without his consent, this is not the view in our state. Williston onContracts (Rev. Ed.) § 396, citing Peoples Bank and TrustCo. v. Weidinger, 73 N.J. Law 433."
At the final hearing it was agreed by those interested that a private sale of the real estate be made within 60 days from the date of the hearing and that in the event of failure of the trustee so to do, that the lands be exposed at public sale and sold to the highest bidder, such sale as made to be subject to the confirmation of this court.
It would seem that inasmuch as this court has decreed a sale of the real estate and directed what disposition should be made of the proceeds of such a sale as may be made, that the account of the trustee should be finally passed upon by this court, and such will be the order, but it is not apparent *Page 436 
that there is any reason for this court to assume jurisdiction in the matter of the settlement of the Cramer estate, especially in view of the fact that the Orphans Court has already assumed jurisdiction. However, if counsel should desire to further argue this question it may do so on the fixing of the form of the decree, which may be entered in conformity herewith.