[No. 395. On Rehearing. August 21, 1891.]

GUADALUPE S. DE GARCIA y PEREA, Appellee, v. MARIANO BARELA, Appellant.

Will—Fraud—Equity—Jurisdiction of District and Probate Courts.
    Section 10 of the organic act, providing that the judicial power of the territory shall vest in the supreme court, district courts, probate courts, and justices of the peace, and that the jurisdiction of the several courts "shall be as limited by law," does not confer chancery jurisdiction on probate courts. Such jurisdiction is inconsistent with the nature and scope of such courts. Ferris v. Higley, 20 Wall. 375. Therefore a suit by the wife of the testator against the administrator for relief from a receipt fraudulently obtained by him, by which she released her right in her deceased husband's estate, valued at $6,000, being an equitable demand, was properly brought by bill in the district court.

ID.—CODICIL, VALIDITY OF, POWER OF PROBATE JUDGE TO DECLARE.
Under sections 1446–1449, Compiled Laws, the probate judge has no
power to declare a will or codicil invalid, not executed according to
statute (sec. 1380, Comp. Laws, 1884). But it is his duty in such
case, to return the will or codicil to the person presenting the same,
without approval, indorsing thereon his reasons for withholding his
approval; and such person may then present such will or codicil to
the district court for a judicial determination of its validity, not by
appeal, but by an original suit instituted in that court.

ID.—BEQUEST, CONSTRUCTION OF—PRESUMPTION.—A clause in a will
bequeathing to the wife "all articles of goods in my house, personal
furniture, household furniture, and all that exists therein," will be
held to include money in an iron safe in the house, not mentioned in
the will, where the husband has sufficient means; the presumption
being that he intended to make ample provision for her, to whom he
owed protection and support.

APPEAL from the Third Judicial District Court,
Dona Ana County. Decree below for complainant,
affirmed February 12, 1890, 5 N. M., page 458. Motion
for rehearing. Motion overruled.

The opinion states the case on the rehearing.

WADE & RYNERSON and CATRON, KNAEBEL &
CLANCY for appellant.

S. B. NEWCOMB for appellee.

LEE, J.—This is an application for a rehearing of
this case, which was argued and decided at the Janu-
ary term, 1890. Upon the hearing of the cause,
counsel for appellant contended that the court below
had not jurisdiction to hear and determine the cause,
for the reason that section 562, Compiled Laws, 1884,
vested in the probate court exclusive original jurisdic-
tion to determine all matters of controversy involved
in the cause; and this court decided that, if said sec-
tion 562 was susceptible of the construction claimed
for it, said section was in conflict with section 1868 of
our organic law, which provides that "the supreme
court and the district courts, respectively, of every
territory shall possess chancery as well as common law

jurisdiction." The appellant insists that this court erred in its former opinion, and asks to have the cause reheard upon this and other grounds stated in the petition for a rehearing.

Section 10 of our organic act provides that "the judicial power of said territory shall be vested in a supreme court, district courts, probate courts, and in justices of the peace. * * * The jurisdiction of the several courts herein provided for, both appellate and original, and that of probate courts and of justices of the peace, shall be as limited by law. * * *" The supreme court of the United States, in Ferris v. Higley, 20 Wall. 375, clearly defined the meaning of the words, "shall be as limited by law," and held that it was inconsistent with the nature and scope of probate courts to confer common law and chancery jurisdiction upon such courts in the territory of Utah, whose organic law, in this respect, is substantially like ours. To hold that the probate court of Dona Ana county was possessed of powers to give adequate relief in this case would be to decide that such court possessed chancery jurisdiction. The circumstances of the case and the relief sought are of equitable cognizance, and such as could only be relievable in a court possessing chancery jurisdiction. In any view of the case, the jurisdiction of the probate court is only exclusive as to claims against an estate not exceeding $100. The appellee's claim against the estate under the will was for money devised to her, which amounted to some $6,000; therefore she could, under section 562, bring her suit in the district court in the first instance. Ordinarily such a suit would be at law, but in this case the appellee had a right to sue on the equity side, in order to get relief from the receipt which she insists the appellant fraudulently obtained from her; and

WILL: fraud: equity: jurisdiction of district and probate courts.

equity, being properly invoked for the one purpose, would retain jurisdiction for all purposes necessary to give her complete relief in respect to that claim. The provision of the act of congress, that "the supreme court and district courts, respectively, of every territory shall possess chancery as well as common law jurisdiction," excludes the idea that the probate courts shall have exclusive jurisdiction in cases where equities are involved. Nor would a due regard to public policy and the protection of estates of decedents justify the grant of such extensive powers to probate courts as constituted in New Mexico.

The appellee contends that the appellant had an adequate remedy by appeal from the action of the probate court. We do not think so. The subject of this controversy was some $6,000, which appellee claims was left her by the will of her deceased husband, and that the appellant took possession of the money, and fraudulently obtained from her a receipt for all claims against the estate; that the appellant made no mention of this money in the inventory filed by him in the probate court, but claimed the same belonged to his mother and himself as residuary legatees named in the will. These facts present a case of purely equitable cognizance. She might have taken steps for the protection of her rights in the probate court; but can it be said that the remedy afforded in that court was as ample and adequate as that of the district court. Even the district court would have been powerless to have given her relief under a common law proceeding.

CODICIL, validity of, power of probate judge to declare. Sections 1446–1449 limit the power and prescribe the duty of a judge of probate with respect to the probate of the will. Under these sections the probate judge can not declare a will or codicil invalid because the will was not executed according to the statutes; but if he shall have doubt as to whether the will ought to be approved on

account of its not being executed according to the statutes, he should note his doubts at the foot of the will, and return it to the person presenting the same, and such person may then present the will to the district court for a judicial determination of its validity. This is not done by way of an appeal, but may be by an original suit instituted for that purpose in the district court. In this case a codicil of the will was attested by but two witnesses. The statute requires three. The probate judge, however, approved the codicil, notwithstanding its defective execution. If the probate judge has not power to declare a will or codicil invalid because it is not executed under the solemnities prescribed by statute, we think it follows as a necessary corollary of that proposition that such court would not have power to judicially determine that such will or codicil was valid. Could the probate judge, by approving a codicil to the will, which was invalid under our statute, deprive the parties interested of the right to have the validity of the codicil judicially determined by the district court? It was the duty of the probate judge, when the will was presented to him for probate, having the codicil thereto, which codicil was attested by only two witnesses, to have returned the will to the appellant without approval, and to have indorsed thereon his reason for withholding his approval. Then the appellant could have presented the matter to the district court for a judicial determination of the question, as it is provided in section 1449 that any proceedings had by said judge of probate, not in conformity with the provisions of this act, shall be declared null and of no effect by the district court. The statute does not prescribe the proceedings in which this may be done, and, therefore, to give effect to the statute, there is no reason that it may not be done in any case in which the question may be made an issue. We do not mean to say that in no case

could the probate judge admit to probate and approve a will or a codicil of the will. But if the will and codicil presented to the probate judge appeared to that court to have been executed and attested in the manner required by statute, he could give it his approval; but such approval would be in the exercise of an administrative, and not a judicial, function, and, notwithstanding his approval, a party interested in the will could invoke a judicial determination by the district court as to whether the will was or was not executed and attested as required by statute.

It is contended by the appellants in their motion that the organic act confers an exclusive probate jurisdiction on the probate court, which the legislature is authorized to define. The federal supreme court, in the case referred to, does not so construe it. Justice MILLER, in the opinion, says: "Of the probate courts it is only said that a part of the judicial power of the territory shall be vested in them. What part? The answer to this must be sought in the general nature and jurisdiction of such courts as they are known in the history of the English law and in jurisprudence of this country." But it is claimed that, if the organic act had not conferred such exclusive jurisdiction, this legislature could rightfully do so without conflict with the act of congress. This proposition is correct, provided they have not attempted to confer upon it powers not authorized by the organic act, as it is construed by the supreme court, as before referred to. The organic act provides that the district courts shall have and exercise the same jurisdiction under the constitution and the laws of the United States as is vested in the circuit and district courts of the United States. And the supreme court, in construing the act for the territory of Washington, where the same terms are used, held that the jurisdiction thus conferred is the same as that exercised by the circuit and district courts

of the United States in all branches. The City of
Panama, 101 U. S. 453. And the equity jurisdiction
conferred on the federal courts is held by that court
to be the same "that the high court of chancery in
England possesses, and is subject to neither limitation
nor restraint by state legislation." The court is bound
to exercise the jurisdiction if the bill, according to the
received principles of equity, states a case for equity
relief. "The absence of a complete and adequate
remedy at law is the only test of equity jurisdiction, and
the application of this principle to a particular case must
depend on the character of the case as disclosed by the
pleadings. It is not enough that there is a remedy at
law. It must be plain and adequate, or, in other words,
as practical and efficient to the ends of justice and its
prompt administration as the remedy in equity." "It
is very evident that an action at common law on the
bond of the administrator would not give the com-
plainant a practical and efficient remedy for the wrongs
which she has suffered. A proceeding at law is not
flexible enough to reach the fraudulent conduct of the
administrator, which is the groundwork of this bill, or
to furnish proper relief against it. It is, however,
well settled that a court of chancery, as an incident to
its power to enforce trusts and make those holding a
fiduciary relation account, has jurisdiction to compel
executors and administrators to account and distribute
the assets in their hands. The bill under review has
this object, and nothing more.

"It is true, the bill seeks to open the settlement
with the probate court as fraudulent, and to cancel the
receipts and transfers from the complainant to the
administrator because obtained by false representations,
but the determination of these questions is necessary
to arrive at the proper value of the estate." Payne v.
Hook, 7 Wall. 425. This case is fully sustained by
various other decisions of the supreme court of the

United States. It covers every point involved in the
question of jurisdiction of the court to entertain the
bill and give the relief demanded; and we find that
the same rule of equity jurisdiction is fully recognized
and exercised under state authority in a number of the
states, especially where probate jurisdiction is not
exercised by one of the higher courts. Mr. Pomeroy,
in the third volume, section 1152, of his admirable work
upon Equity Jurisprudence, has carefully reviewed
this question, and has collected the decisions of the
several states and grouped them into three classes:
"In the states of the first class the original equitable
jurisdiction over administrations remains unabridged
by the statutes concurrent with that possessed by the
probate courts. These states are Alabama, Illinois,
Iowa, Kentucky, Maryland, Mississippi, New Jersey,
North Carolina, Rhode Island, Tennessee. In the
states of the second class the jurisdiction of the probate
courts over everything pertaining to the regular admin-
istration and settlement of decedents' estates is virtually
exclusive. These states are Connecticut, Indiana,
Maine, Massachusetts, Michigan, Nebraska, Nevada,
New Hampshire, Oregon, and Pennsylvania. In the
states of the third class the equitable jurisdiction is not
concurrent, but is simply auxiliary or ancillary and
corrective. The probate court takes cognizance origi-
nally of all administration, and has powers sufficient for
all ordinary purposes. Equity interposes only in spe-
cial or extraordinary cases, which have either been
omitted from the statutory grant of probate jurisdic-
tion, or for which its methods and reliefs are imperfect
and inadequate, or where its proceedings have miscar-
ried and require correction. This class includes
Arkansas, Missouri, New York, Ohio, California,
Georgia, Kansas, South Carolina, Tennessee, Texas,
Vermont, and Wisconsin." An examination of the
authorities cited by Mr. Pomeroy shows that even in

some of the states of the second class, where the juris-
diction of the probate court is exclusive, as well as in
all the states of the first and third classes, equity has
jurisdiction of matters and relief incidental to the reg-
ular course of administration which are distinctively of
equitable cognizance, and for which the methods and
remedies of the probate court are imperfect or inade-
quate.

It is claimed in the motion for a rehearing that the
court was mistaken in holding that fraud had been
practiced upon the appellee, or that she had been
unduly influenced to execute a receipt in full for all
claims against the estate of her late husband, and that
the judgment below should have been reversed for that
reason. This is a pure question of fact which the
master found from the evidence, and, as a general
rule, the appellate court will not reverse upon a ques-
tion of fact which the court below has found from con-
flicting evidence where the record shows substantial
evidence sustaining the conclusion. There is evidence
tending to show that the appellee was an ignorant
woman; that her fears had been aroused that if she
did not agree to the settlement proposed she might lose
the place upon which she was living. And, taking all
the evidence together, we are not prepared to say that
the findings of the facts upon which the decree was
based was not correct.

Counsel for appellant also contend that the trans-
lation of the fourth clause of the will, upon which the
court predicated its construction of said
clause, is incorrect. This translation was
the one adopted, or at least acquiesced in, by counsel
on both sides. The record (page 293) shows this
admission: "It is hereby admitted that exhibit 8 is
the sworn translation of the will of Pedro Garcia y
Perea, by Pinito Pino, and that the same may be
introduced as such." No objection was made to the

BEQUEST, con-
struction of:
presumption.

introduction of the translation, nor was any other evidence offered to show that such translation was not correct. Pedro Lassaigne, parish priest, a witness for appellee, upon this point testified as follows: "Question. You understand the Spanish language well? Answer. Yes. Q. What do you infer from the word in the fourth clause from the last six words in the clause, namely, 'y todo lo que alli exesti?' A. I construe those words to mean, 'Everything in the house at that time.'" And on cross-examination: "Q. You will look at the translation which I hand you [Exhibit number 8] of the fourth clause of Pedro Garcia y Perea's will. State whether it is a correct translation or not. A. I think it is correct; strictly so. Q. You have been called upon to translate certain portions of this will from Spanish into English by Judge Newcomb. Is it not a fact that your knowledge of English is very imperfect, and that you have repeatedly found it necessary during your examination here to deliver your testimony through an interpreter? A. Certainly." Appellant now contends that the proper translation of the phrase is, "and all which there exists," and that "there" refers to "in my house" and nothing more; and that appellee, under the words, "and all which there exists," would only be entitled to take such things as were ejusdem generis with "all articles of goods, personal furniture, and household furniture," which were particularly mentioned. But, conceding that the translation now contended for is the correct one, can we assent to the proposition that the testator intended to leave the money in the safe to his residuary legatees, and not to his wife? We do not think the rule ejusdem generis applies to the case. That rule is defined by the supreme court as follows: "It is doubtless true that in the construction of wills as well as of statutes, where certain things are enumerated, and a more general description is complied

with, the enumerated description is commonly understood to cover only things ejusdem generis with the particular things mentioned." Given v. Holton, 95 U. S. 598. The rule is not an arbitrary one, and is only to be invoked to give effect to the intention of the testator when the language used is uncertain. If he had said, "the safe and all therein," it would hardly be contended that it did not include the money in the safe. How much less specific are the words used. "I also grant to my wife, already referred to, all articles or goods in my house, personal furniture, household furniture, and all that therein exists." The iron box or safe was in the house. The money was in the safe. It therein existed. Therefore, according to the plainest acceptation of the terms, or according to the strictest rules of logic, it was included in the bequest. The technical rule invoked could not change plain language, or give a different meaning to words from that which they clearly import. The testator was an ignorant man, that could neither read nor write. The draughtsman of the will was not a lawyer, or a man learned in the use of technical words. He testifies that he wrote it down as the testator directed him to do. In order to determine the intention of the testator we must consider the language, the circumstances under which it was used, the relation and the condition of the parties. Where a testator has sufficient means, in making a will, the presumption is that he will make ample provision for his wife. This presumption arises from the fact that he owes her protection and support as well as affection. The presumption may be overcome by proof that he was actuated by motives of a different character. But there was no evidence in this case of that character, though the master received oral testimony as to the intention of the testator, and finds from that evidence as a matter of fact that he intended leaving the money in the safe to his wife. We think

the result of the conclusion before reached is correct. The motion for rehearing will, therefore, be overruled.

O'BRIEN, C. J., and SEEDS and FREEMAN, JJ., concur.