## Annie Prettyman, Administratrix, Appellant, v. Milton S. Marcy et al., Appellees.

### Gen. No. 6,362.

1. STIPULATIONS, § 23*—*what is effect of stipulations as to foreign law.* Where it was stipulated by the parties that the construction of the will in question was to be controlled by the laws of a foreign State and that the published reports and the statutes of such State were to be considered in the decision as if they had been introduced in evidence, *held* that the court could not concede that parties to a suit in the State could cast upon any court the duty of searching at its peril through the various statutes and decisions of another State to ascertain what the law is in such foreign State.

2. WILLS, § 264*—*what words "die without lawful issue" as applied to remaindermen construed as meaning.* Where, under the terms of a will which was stipulated to be controlled by the laws of New Jersey, the widow of the testator was given the use of the real estate so long as she remained a widow, or the proceeds thereof in case of sale, and if she married or died certain payments were to be made to persons named, and the residue was to be divided equally between a son and a daughter, and if either or both should die without lawful issue the portion which would have gone to the decedent should go to the surviving brother or sister, and the widow died, and said son died after the mother, and without issue, though he had issue who died before the testator's death, and the main question was whether the words "die without lawful issue, though he had had issue who died before the testator's death, without such issue before the death or remarriage of the widow, that is before the period of distribution, *held* that under the law of such foreign State such provision meant that if either of the residuary beneficiaries died without lawful issue before the death or remarriage of the widow, the portion of the decedent should go to the surviving brother or sister, but that if they each survived the death or remarriage of the widow, they took the estate absolutely, one-half to each.

3. WILLS, § 227*—*when expressed intent of testator governs in construction of will.* Where, in the construction of a will, it was contended that the fact that certain children had been blind from birth should have a bearing in construing the will to determine that no one but those two should have the property while either lived,

*held* to interpret the will in such manner would be to make a will for the testator which he himself did not see fit to make, and that the will must be construed according to the intent expressed and not from an intent which the testator might have had in mind but did not express.

4. WILLS, § 441*—*when legatees do not consent that sum paid to life tenant out of proceeds of sale of real estate be deducted from legacies.* Where a will provided for the payment of certain legacies upon the death of the widow, the life tenant, or upon her remarriage, and further provided that the wife should have the interest on the proceeds of the property during her life in the event of sale of the real estate, as long as she remained a widow, and then contained a residuary disposition, and it was contended that because the legatees had agreed to the payment of a certain sum out of the proceeds of the sale of real estate to the widow, they had lost their right to be paid out of the balance, *held* that by consenting to such payment such legatees could not be considered as having permitted that amount to be paid from their legacies.

Appeal from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding. Heard in this court at the October term, 1916. Reversed and remanded with directions. Opinion filed April 19, 1917.

MILES & FULLER, for appellant; A. D. HARRINGTON, of counsel.

RICHARD H. RADLEY, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

On May 2, 1913, Mary Virginia Marcy, of Philadelphia, filed in the Circuit Court of Peoria county a bill in equity in her own right and as executrix of the last will of Walter E. Marcy, her deceased husband, against Milton S. Marcy, of Peoria, wherein she claimed that by virtue of the death and will of her deceased husband, and by a true construction of the will of R. Sumner Marcy, the father of her husband, she was entitled to a certain sum of $2,300 arising

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

from the estate of R. Sumner Marcy, and in the hands of said Milton S. Marcy as a trustee, and she sought an account from said trustee, and that securities for said sum be turned over to her if safe, and, if not, that the sum represented thereby be paid to her in money. Milton S. Marcy answered the bill denying that she had any title or interest in said fund. The cause was referred to a master to take and report the proofs and his conclusions. He reported the proofs and reported substantially in favor of complainant, except as to four legacies of $100 each. Complainant filed exceptions in that matter, and defendant filed exceptions as to all the other matters in the report. The court overruled complainant's exceptions and sustained defendant's exceptions, and dismissed the bill for want of equity. Complainant removed the case to this court by appeal. We held that certain parties shown to be living were necessary parties to the determination of the controversy, and we therefore declined to pass upon the construction of the will involved, and remanded the cause with directions to complainant to bring in the additional parties or that her bill be dismissed for want of necessary parties. [*Marcy v. Marcy*, 200 Ill. App. 273.] The cause was reinstated in the court below. By this time Mary Virginia Marcy was dead, and Annie Prettyman was administratrix *de bonis non* with the will annexed of the estate of Walter E. Marcy, deceased, and the bill was amended, and she was substituted as complainant, and she brought in the other necessary parties, and they appeared and answered, denying her rights, and the cause was again referred to the master. It was there stipulated that it should be heard and decided upon the evidence already in the record. The master made the same findings in favor of the complainant as before. Like objections were filed and disposed of in the same manner, and the bill was again dismissed for want of equity, and the complainant appeals.

The portions of the will of R. Sumner Marcy material to this controversy are as follows:

"Item: I give and bequeath to my wife Mary S. Marcy, the use and occupation of all my real estate, so long as she remains my widow, and if my executors at any time during the widowhood of my said wife, Mary S. Marcy, should think best to sell my real estate, I hereby authorize them to do so and the said executors to make good and sufficient deed of conveyance for the same to the purchaser or purchasers thereof, the amount that the house and lot I bought of Charles Shaw, situate in Cape May City, and the house and lot that is situate on the turnpike road to the steamboat landing, less the expenses of the selling of same, to be put out at interest, my wife, Mary S. Marcy, to have the interest on same as long as she remains my widow. But if my widow should marry, or at her death, then if my real estate shall not be sold, then in that case I order all my real estate to be sold by my surviving executor, or executors, at private or public sale as he or they shall think best, as the proceeds to go as hereinafter bequeathed.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"Item: I give and bequeath to my son, Milton S. Marcy, One Hundred Dollars, to him, his heirs and assigns forever.

"Item: I give and bequeath to my daughter Hetty O. Miller, One Hundred Dollars, to her, her heirs and assigns forever.

"Item: I give and bequeath to my grandson Sumner M. Miller, One Hundred Dollars, and to my granddaughter Anna Miller, One Hundred Dollars, to them, their heirs and assigns forever, to be paid to them by my executors when they shall attain the age of eighteen years.

"Item: I give and bequeath the residue and remainder of my estate to be equally divided share and

share alike between my son Walter E. Marcy and my daughter Lucy E. Marcy, and if either of the said Walter E. Marcy or Lucy E. Marcy, or both should die without lawful issue, then I will and bequeath his or her share to be equally divided between his, her or their surviving brother and sister."

R. Sumner Marcy lived and died in New Jersey. The real estate referred to in the will is in New Jersey. The will was probated in New Jersey. It was stipulated in this cause that the construction of this will is to be controlled by the laws of New Jersey, and that the published reports and the statutes of New Jersey are to be considered in the decision of this case as if they had been introduced in evidence. We do not concede that parties to a suit in this State can cast upon any court herein the duty of searching at its peril through the various statutes of another State and through its decisions to ascertain what the law is in that State. Here the evidence upon which this case is to be decided is not in the certificate of evidence, but we are expected to find it, with the aid of counsel in their briefs. But we have concluded to waive this matter and decide the case upon such decisions of the courts of New Jersey as seem to us controlling. Mary S. Marcy survived her husband, and after a time the real estate referred to in the foregoing clauses of the will was sold for $3,639.47. By agreement of the adult legatees and devisees, $639.47 thereof was paid to the widow, $3,000 thereof was placed in the hands of Milton S. Marcy, of Peoria, and by him invested, and he collected interest thereon and paid it to the widow, Mary S. Marcy, until her death, and thereafter paid said interest equally to Walter E. Marcy and Lucy E. Marcy, above named, until by a transaction between Walter E. Marcy and Lucy E. Marcy, the sister, Walter conveyed to Lucy certain real estate, and Lucy, in payment thereof, assigned to Walter

$800 of her interest in said fund, and thereafter Milton paid Walter the income from $2,300 and paid Lucy the income from $700 until Walter died. Walter had had a child long before his father's death, and before this will was made, but that child had died in Walter's father's lifetime, and Walter left no issue surviving. The main question is whether the words "die without lawful issue" in the last part of the will above named mean die without lawful issue at any time, or die without lawful issue before the death of his mother and the period of distribution.

The first New Jersey case to which our attention is called is *Pennington v. Van Houten's Ex'rs*, decided by the chancellor in 8 N. J. Eq. 272, and by the court of errors in 8 N. J. Eq. 745. In a later New Jersey case [*Patterson v. Madden*, 54 N. J. Ed. 714] the two rules laid down in the *Van Houten* case are thus stated by that court:

"By the decision in *Pennington v. Van Houten*, as I understand it, two rules are established in the construction of wills containing limitation over by way of executory devise after the death of the original devisee without issue, viz.:

"First, if land be devised to A. in fee and a subsequent clause in the will limits such land over to designated persons in case A. dies without issue, and A. so dies, and the specified devisees are *in esse* at his death, and there is no further event expressed in the will to which the limitation over can fairly be referred, then A. takes a vested fee which becomes divested at his death and vests in those to whom the estate is limited over.

"Second, where there is an event indicated in the will other than the death of the devisee to which the limitation over is referrable (for instance the distribution of the testator's estate, or the postponement of the enjoyment of the property devised until the dev-

isee reaches the age of twenty-one or until the exhaustion of a prior life estate), such limitation over will be considered to refer to the happening of such event, or to the death of the devisee, according as the court may determine from the context of the will and the other provisions thereof that the limitation clause is set in opposition to the event specified, or is connected with the devise itself.''

The will of Abraham Van Houten, Sr., gave his wife certain property until his son, Abraham Van Houten, Jr., should arrive at the age of twenty-one years, and then gave his son the residue of his estate, with directions to the executors to manage the estate and support said son until he arrived at twenty-one years of age. It contained this clause: ''But if my said son, Abraham Van Houten, should die having no children, then my will is and I do dispose of my property in the following manner:'' following which was an entirely different disposition of the property. The son Abraham became twenty-one years of age and afterwards died without having had a child. It was held that the true construction of this will was that the devise over was upon the condition of the son's dying under twenty-one and without issue, and that when he arrived at the age of twenty-one he took the title relieved of the provision over. In *Williamson v. Chamberlain*, 10 N. J. Eq. 373; *Baldwin v. Taylor*, 37 N. J. Eq. 78; *Denise's Ex'rs v. Denise*, 37 N. J. Eq. 163; *Barrell v. Barrell*, 38 N. J. Eq. 60; *Bishop v. McClelland's Ex'rs*, 44 N. J. Eq. 450; *Neilson v. Bishop*, 45 N. J. Eq. 473; *Dawson v. Schaefer*, 52 N. J. Eq. 341; *Patterson v. Madden*, 54 N. J. Eq. 714; *Howell v. Gifford*, 64 N. J. Eq. 180; and *Security Trust Co. v. Lovett*, 78 N. J. Eq. 445, this rule is restated and applied in many ways to wills in substance and spirit like the one now before us. In all these cases it was held that if the devisee or legatee survives the time of distribu-

tion he takes the estate absolutely, and the gift over will take effect only in the event of the death of the first devisee or legatee before the period of distribution. The rule there is thus stated in 40 Cyc. 1505: "But where the disposition of the property which is devised over is preceded by a prior estate for life or years, then the general rule is that the death without issue refers to a death occurring during the period of the intervening estate, such as before the death of the life tenant, unless there are words in the will which show that the testator intended to refer to a death occurring before his decease, or at a later date than the termination of the particular estate." These principles have been sustained in our own Supreme Court in *Lachenmyer v. Gehlbach,* 266 Ill. 11, and the case of *Howell v. Gifford, supra,* is there followed. It will be observed that these authorities follow the second of the propositions laid down in *Pennington v. Van Houten's Ex'rs, supra,* and if they state the rule properly applicable to this case, then the complainant is entitled to a decree. Appellees contend that the case comes within the first of the propositions in the *Van Houten* case, and rely upon *Rowe's Ex'rs v. White,* 16 N. J. Eq. 411; *Ackerman's Adm'rs v. Vreeland's Ex'rs,* 14 N. J. Eq. 23; *Groves v. Cox,* 40 N. J. Law 40; *Wurts' Ex'rs v. Page,* 19 N. J. Eq. 365; *Drummond's Ex'r v. Drummond,* 26 N. J. Eq. 234; *McDowell v. Stiger,* 58 N. J. Eq. 125.

We have reached the conclusion that the second rule laid down in *Pennington v. Van Houten's Ex'rs,* is the one that controls the construction of the will in this case. Mary S. Marcy, the widow of R. Sumner Marcy, was given the use of the real estate so long as she remained his widow, or if the executors thought best to sell the real estate they could do so and put the proceeds out at interest, and pay the interest to his wife so long as she remained his widow. If the real

estate was not sold but the widow married or died, then the executors were to sell the real estate and the proceeds were to go as thereinafter provided, namely, $100 each to two sons and $100 each to two grandchildren, and the rest of the estate to be divided equally between his son Walter and his daughter Lucy, and if either or both should die without lawful issue, then to his, her or their surviving brother and sister. If that provision meant that if they should die at any time without lawful issue then it was to go to the surviving brother and sister that would mean that they each only took a life estate under this will, and the language is not suitable for the establishment of a life estate, and a life estate could have been much more easily created, and in such case the remainder of his estate would not be equally divided share and share alike between Walter and Lucy, as the will says. We think, therefore, in harmony with the cases cited under the second rule in the *Van Houten* case, that this provision means if Walter or Lucy die without lawful issue before the death or remarriage of the widow— that is, before the period of distribution arrived— then it should go over to their surviving brother and sister; but that if they each survived the death or remarriage of Mary S. Marcy, then they took the estate absolutely, one-half to Walter and one-half to Lucy. Walter and Lucy were blind from birth, and it seems to be supposed that on that account this will should have a different construction, in order to protect Lucy after her brother's death. No doubt the testator might have made a different will, and he might have provided that no one but those two should have this property while either of the blind children were alive. But to interpret that into this will is to make a will for the testator which he did not see fit to make for himself. The will is to be construed according to the intent which the testator expressed therein and not

from an intent which he may have had in his mind but did not express. *Nice v. Nice,* 275 Ill. 397, page 400.

The words in the last paragraph above quoted: "I give and bequeath the residue and remainder of my estate" means that the four preceding legacies of $100 each are charged upon the entire estate, and are to be paid before Walter and Lucy receive their shares. It is said that the legatees agreed that the widow might have said sum of $639.57, and therefore they lost their right to have their legacies paid out of the $3,000. This cannot be wholly true if, as we understand it, the two grandchildren were not yet of age. They did not join in the deed. But we are of opinion that in any event these legacies were to be paid before the residue passed to Walter and Lucy, and that by consenting that Mary S. Marcy should be paid the sum just mentioned, they cannot be considered to have permitted that to be paid from their legacies.

The decree will therefore be reversed and the cause remanded with directions to reduce the estate to money and pay the costs of this case in the Circuit Court and any proper charges and expenses of the trustee therefrom, and to pay said legatees each $100, with interest from the date of the death of Mary S. Marcy, and from the residue pay complainant $800 more than one-half, and Lucy E. Marcy, who now by marriage has become Lucy E. Marcy Feltus, $800 less than one-half, and divide in the same proportion whatever income may have been accumulated during the pendency of this litigation.

*Reversed and remanded with directions.*

Mr. Presiding Justice Niehaus took no part.