CAMDEN TRUST COMPANY, administrator *cum testamento annexo* of Jennie Cramer, deceased, CAMDEN TRUST COMPANY, trustee under the will of Jennie Cramer, deceased, and CAMDEN TRUST COMPANY, trustee under indenture of trust by Rita E. Haldeman et al., complainants-appellants,

*v.*

ROBERT W. CRAMER, defendant-respondent, and FEDERAL DEPOSIT INSURANCE CORPORATION, defendant-appellant.

[Argued May 18th, 1944—Decided January 4th, 1945.]

262

*Messrs. Norcross & Farr* (*Mr. Frank S. Norcross* and *Mr. Joseph Beck Tyler,* of counsel), for the complainants-appellants.

*Mr. Grover C. Richman,* for the defendant-appellant, Federal Deposit Insurance Corporation.

*Mr. Walter S. Keown,* for the defendant-respondent, Robert W. Cramer.

The opinion of the court was delivered by

HEHER, J.

The challenged decree construes the will of Jennie Cramer, deceased, and determines the rights of the parties in the *res* of a certain indenture of trust created by the decedent's children and residuary legatees, termed for convenience the "Haldeman Trust." The pertinent facts and circumstances are set out in the opinion of the learned Vice-Chancellor.

The Camden Trust Company, as trustee of the Haldeman Trust, maintains that it is entitled to reimbursement out of the proceeds of the sale of the real estate constituting the trust *res,* prior to the payment of the grandchildren's pecuniary legacies, for moneys advanced by it for the purchase of a tax sale certificate covering the lands, on the alternative theories (a) of equitable subrogation to the rights of the municipality, or (b) of a constructive trust for the benefit of the pecuniary legatees arising from the conveyance of the testatrix' lands by the residuary legatees to the trustee without payment of the pecuniary legacies, and the preservation of the *res* for the benefit of the pecuniary legatees by the trustee's payment of the tax arrears.

The Vice-Chancellor ruled that the purchase of the tax sale certificate was necessary to preserve the trust *res,* and that the trustee is entitled to reimbursement "by the *cestui*

or out of the trust estate," but that the pecuniary legacies consitute "a prior lien" on the real estate.

The specific contention in this regard is that, in thus satisfying the tax arrears, the trustee "was acting in the performance of a duty which it had as trustee, to prevent the loss of the real estate through the foreclosure of the tax sale certificate" held by the municipality; that the tax lien was prior to "any lien" the pecuniary legatees had in the lands, and that these legatees "derived a benefit from the payment of the taxes," and therefore equity and justice would be served by the application of the principle of subrogation; and that, at all events, a constructive trust arose in favor of the pecuniary legatees, and, notwithstanding the implicit failure of duty, complainant may, as the constructive trustee, recover the moneys expended in liquidating the tax lien on the *res*. We take a different view.

Subrogation is a doctrine of purely equitable origin and nature, although it is a right that is now considered as within the cognizance of courts of law in certain circumstances. Since it is an equity, it is subject to the rules governing equities; and it is axiomatic that it will not be enforced where it would be inequitable so to do. It will not be allowed to work injustice to others having equal or superior equities. The right of subrogation must be founded upon an equity just and reasonable according to general principles—an equity that will accomplish complete justice between the parties to the controversy. The one asserting the right cannot thereby profit from his own wrong; he must himself, be without fault. *Bater* v. *Cleaver, 114 N. J. Law 346.* Subrogation is a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it. *3105 Grand Corp.* v. *City of New York, 288 N. Y. 178; 42 N. E. Rep. (2d) 475.* The process is analogous to the creation of a constructive trust, the creditor being compelled to hold his rights against the principal debtor, and his securities, in trust for the subrogee. *Pom. Eq. Jur. (4th ed.),* §§ *2343, 2349.* A constructive trust is raised by equity to effectuate justice in the most efficient manner, where the parties have no intention of creating such a relation, and in most cases contrary to the

trustee's intention and will. It ordinarily arises when the legal title to property is obtained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled, and when the property so obtained is held in hostility to his beneficial rights of ownership. Fraud, either actual or constructive, is usually an essential element. *Down* v. *Down, 80 N. J. Eq. 68; Pom. Eq. Jur. (5th ed.),* §§ *151, 1044 et seq.*

As was the case in *Bater* v. *Cleaver, supra,* the allowance of subrogation here would contravene the plainest principles of right and justice. The trustee joined in a reconversion of the real estate by the residuary legatees that would violate the essential rights of the pecuniary legatees unless provision were made for the satisfaction of their legacies. The will charged the lands with the payment of these legacies; and the personal property was negligible. This responsibility to the pecuniary legatees was acknowledged by all the parties in the provision for a loan by the appellant trust company, in its corporate capacity, to the residuary legatees as individuals, evidenced by their joint and several promissory note, and secured by an assignment of their respective interests in the lands as *cestuis que trust* under the Haldeman Trust, of the sum of $7,500, the amount necessary to liquidate the pecuniary legacies as well as the debts, taxes, and administration expenses. The bank forthwith advanced to itself, as administrator *cum testamento annexo,* the sum of $3,550, sufficient to pay all obligations of the enumerated classes except the pecuniary legacies; and the money was used for that purpose. But it failed, and finally refused, to supply the moneys needed to pay the legacies (aggregating $3,600), assigning as the reason the decline of the real estate market; and on November 9th, 1934, it credited this amount on the promissory note, and thereafter considered itself relieved of all further liability in the premises. The tax sale certificate was purchased on March 25th, 1937. The declaration of trust made by appellant recites that under the will the lands were subject to the payment of the debts, taxes, administration expenses, and the legacies, and that "arrangements have been made" by the residuary legatees "for the payment" of

these obligations "without the sale of said lands to raise the necessary funds therefor." By a contemporaneous writing, the residuary legatees, as the makers of the promissory note for $7,500, directed the appellant bank, in its corporate capacity, "to pay the proceeds" of the note to itself, as administrator *cum testamento annexo*, "at such time and in such amounts as" it, as administrator *cum testamento annexo*, "may request."

We have no occasion to determine whether the Vice-Chancellor was correct in his conclusion that the residuary legatees' non-action constituted an abandonment and rescission, *pro tanto*, of the trust company's contractual undertaking to lend them the face amount of the promissory note for the purposes indicated. It is both sound law and good morals that a fiduciary may not, in case of conflict, subordinate the *cestui's* interest to his own. Undivided loyalty is of the very essence of the relationship. The trustee is under a peremptory duty of complete loyalty and fidelity to the *cestui*. Self-interest can never be the determinative. He cannot serve two masters in an area of service involving divergent and discrepant interests. It would seem that here the contract of loan was not terminable without the consent of the bank, acting as administrator *cum testamento annexo* in the interest of all the beneficiaries (the grandchildren were minors at the time of the reconversion), and then only upon a sufficient consideration. It was a primary duty of the administrator to gather in the assets of the estate. *In re Brueck, 124 N. J. Eq. 62.* But we need not pursue the inquiry. Suffice it to say that the bank undertook this obligation to enable the residuary legatees to effect a reconversion of the real estate, and to discharge their concomitant duty to satisfy the debts and legacies; and the bank's failure of duty in this regard plainly disentitles it to reimbursement, by subrogation, for the taxes paid, for by that process it would visit the consequences of its own default upon the innocent pecuniary legatees, and thus work inequity and injustice. It was under an absolute contractual duty to turn over the proceeds of the promissory note to itself, as administrator, for the immediate payment of the debts and legacies; and non-performance of

that undertaking was so oppressive and injurious to the pecuniary legatees as to render the doctrine of subrogation inapplicable. If it had provided the money for the satisfaction of the legacies in accordance with its corporate undertaking and the terms of the trust, timely payment of the legacies would have been made. And if the lands had been sold in due course for the execution of the testamentary directions, there would have been no occasion for the present controversy. As the Vice-Chancellor declared, the residuary legatees could not, by the process of reconversion, impair or nullify the rights of the pecuniary legatees. *Vide Morse* v. *Hackensack Savings Bank, 47 N. J. Eq. 279.* The residuary legatees were mindful of their duty in this regard; and the design of the arrangement with the appellant bank was to make available the moneys needed to render payment of the pecuniary legacies in full. This for their own as well as the legatees' benefit. Immediate satisfaction of the debts and legacies was the undoubted object of all the parties. Their payment was made a charge upon the moneys which the bank agreed to loan.

Subrogation is designed to promote and accomplish justice. As stated, it is the mode which equity adopts to compel the ultimate discharge of a debt by one who in justice, equity and good conscience ought to pay it. It will be enforced only when the applicant therefor has an equity to invoke, and the cause is just, and its enforcement is consonant with right and justice, and then only in a clear case. *Bater* v. *Cleaver, supra.* The equity of the pecuniary legatees here is superior to such right of reimbursement as appellant may have.

And, by the same reasoning, there is no merit in the contention that appellant is entitled to such relief as a constructive trustee.

Appellant held the lands under an express trust; but if it be deemed a constructive trustee as to the non-participating pecuniary legatees, the like considerations of justice serve to negative the right of reimbursement at the expense of these legatees.

It is to be observed also that the taxes were paid under the express trust; and, as said, that trust was made subject to

the prior liens of the pecuniary legatees. The declaration of trust conferred upon the trustee authority to borrow money to pay taxes and to preserve the *res* for the benefit of the residuary legatees as the *cestuis que trust,* whose interest in the *res* was subject to the equitable lien of the pecuniary legatees. It would not be equity to allow for disbursements thus made by the trustee unless it is also charged with the consequences of its breach of duty. As said by Vice-Chancellor Stevens in *Guatelli* v. *Brown, 80 N. J. Eq. 33:* "Trusts are often raised against those who participate in indefensible transactions, but not in their favor." The doctrine of trusts is an instrument of equity for the maintenance of justice, good faith, and good conscience. *Pom. Eq. Jur. (5th ed.),* § *151.* The constructive trust is used by Chancery to work out a just result. It is a formula through which the ·conscience of equity finds expression. The equity of the transaction must shape the measure of relief. *Bogert on Trusts and Trustees,* §§ *33, 471.*

The Federal Deposit Insurance Corporation, as assignee of the note for $3,550, likewise invokes the principle of equitable subrogation, on the theory that decedent's debts were liens upon her real estate prior to the pecuniary legacies, and equity'will keep the debts alive for the protection of the party paying them against all others interested, and subrogate him to all the rights of the creditors whose debts have been satisfied. The cases of *First National Bank of Freehold* v. *Thompson, 61 N. J. Eq. 188,* and *Owen Creek Presbyterian Church* v. *Taggart, 44 Ind. App. 393; 98 N. E. Rep. 406,* are cited.

The cases are not apropos. These were not moneys advanced by the trustee, *qua* trustee, or by the administrator *cum testamento annexo,* for the payment of the debts. Quite the contrary. The trust company, in its corporate capacity, loaned the money to the residuary legatees under its contract with them for the settlement of the debts, and, as stated, they gave their personal note to the bank for the amount of the loan, and secured it by an assignment of their interest in the trust *res.* The common purpose was to satisfy both the debts and the legacies without the right of subrogation. There was no equity which the bank could invoke by the process of

subrogation; and the assignee stands in the shoes of the assignor.

The next point made is that the pecuniary legacies given to the testatrix' five granddaughters, aggregating $2,500, are "in the nature of specific legacies," in that the language reveals an intention to make them "payable out of the distributive shares of the respective residuary legatees who were their respective parents;" and that the failure so to decree constitutes reversible error.

The Vice-Chancellor, in a supplemental unreported opinion, held that these are general legacies, and thus chargeable to the real estate.

The question is one of intention, to be gathered from the words employed to express the testamentary purpose, considered in relation to the instrument as a whole and the attendant circumstances. After providing for certain general and specific legacies, the testatrix directed the division of the residue of her estate into five parts, and that one part be paid to her daughter, Rita Haldeman, and the

```
"balance.  *   *   *   divided in four for my other children
        One fourth to C. W. Cramer 2nd
        One fourth to Paul T. Cramer
        One fourth to Norma C. Mottet
        One fourth to Roscoe V. Cramer
        From C. W. Cramer              ) deduct   $500
        From Paul T. Cramer            ) deduct   1000
        From Norma C. Mottet           ) deduct    500
        From Roscoe Cramer             ) deduct    500
   To be placed in trust for my Granddaughters
        Collette Cramer          $500
        Geneva Cramer
        Patricia Cramer                          each)
        Rita Mottet
        Miriam Cramer
   To be given them at the age of 21.  To be held by Camden Safe
Deposit & Trust Co."
```

We concur in the Vice-Chancellor's view that these bequests to the grandchildren take the classification of general legacies. Viewing the terms and arrangement of the particular bequests in the light of the general testamentary design and the character and value of the assets of the estate, the intention to

render the real estate liable for the satisfaction of these legacies is evident.

Specific legacies are subject to ademption; and it is the settled rule of construction that a legacy will not be deemed specific unless the testator has explicitly indicated such to have been his intention. *Blair* v. *Scribner, 67 N. J. Eq. 583; Mecum* v. *Stoughton, 81 N. J. Eq. 319; Patanska* v. *Kuznia, 102 N. J. Eq. 408; affirmed, 104 N. J. Eq. 203.* A specific legacy is a bequest of certain property *in specie.* The testator must have had in contemplation, as the subject of the legacy, a specific, identical thing, and none other, or the legacy will be regarded as either general or demonstrative, depending upon whether a fund or particular property is indicated as the primary source of its payment. The mere fact that he owned property precisely answering the description of that bequeathed is not enough to render the bequest specific. If the subject-matter is not sufficiently individuated, the legacy is treated as general or demonstrative. *Vide In re Vanderbilt's Estate, 90 N. J. Eq. 254.* A demonstrative legacy is a general gift to be raised primarily out of certain specified property. It partakes of the attributes of both general and specific legacies. It is payable out of the estate generally, but is charged, as against other legatees or devisees, on certain specific property. It is specific in so far as it is payable out of the particular fund or property, and general in so far as the fund or property is insufficient for the purpose. And, for fear of defeating the intention of the testator, by the destruction or conversion of the property specifically given, the courts lean toward such a construction as will make the bequest demonstrative rather than specific. *Johnson* v. *Conover, 54 N. J. Eq. 333; Page on Wills (Perm. ed.),* §§ *1398, 1399.*

Rita Haldeman was childless. Three of the testatrix' children, C. W. Cramer, 2nd, Norma C. Mottet and Roscoe V. Cramer, each had one daughter; and the remaining child, Paul T. Cramer, had two daughters. And the trustee argues that the testatrix intended that "each granddaughter was to receive her legacy of $500 out of her father's or mother's distributive share of the residuary estate;" that the testatrix

has thereby "identified a particular part of her estate out of which" these legacies "are to be paid," and therefore they are not general legacies; and that, if they are held to be demonstrative legacies, "the distributive share of the testatrix' residuary estate which is payable to her daughter, Rita Haldeman, will be subjected to the payment of such legacies," and this would violate the clearly expressed testamentary intent. Yet it concedes that these legacies "cannot be strictly classified as specific legacies, in that the fund from which they are payable, namely, the distributive shares of her four children other than her daughter, Rita Haldeman, was not in existence at the time she made her will." The insistence is that the legacies "should be construed" as "in the nature of specific legacies."

But the bequests to the grandchildren are general in form. They are payable out of the general estate. The legacies to both the children and the grandchildren are payable out of the residue, and are chargeable upon the real estate. The testamentary design was to give an equal part of the *residuum* to each of the testatrix' children, reduced by the portion allotted to his or her children; and, so viewed, the legacies to the grandchildren, like those given to the children, are general and not specific in character. The bequests to the grandchildren were not made payable out of a particular fund in being or charged to a specific item of property, but rather made a charge upon the residue, precisely as in the case of the legacies to the children; and thus they are all general legacies. Plainly, the testatrix did not have specific legacies in mind. This was merely a distributive formula designed to effect a division of the residue in consonance with the testatrix' conception of family equality, *i. e.*, an equal distribution with each child and his or her children constituting the unit of division. To achieve this parity, she directed that the amount of the legacies to the grandchildren be deducted from the one-fifth share which would otherwise go to their respective parents. But these legacies to the grandchildren are not payable out of moneys bequeathed to the parents. They, too, are direct bequests, general in nature. The formula simply measures the *quantum* of the several bequests. The

legacies to the children are the stated proportion of the residue less the sums given to their respective grandchildren. The trust company makes a fatal concession. It would create an additional category of nebulous outline—bequests "in the nature of specific legacies." Legacies are either general, demonstrative or specific. A legacy not clearly and unmistakably specific is either general or demonstrative.

And there is no substance to the point that the decree "failed to assume jurisdiction of the settlement of the Haldeman Trust."

Chancery's jurisdiction over the settlement of trusts *inter vivos* is no longer exclusive. The Prerogative Court and the Orphans Court now have concurrent jurisdiction,. exercisable only at the instance of the trustee. *P. L. 1938 p. 228; N. J. S. A. 3:10–23 et seq.* But, assuming that Chancery's concurrent jurisdiction was properly invoked here, the concluding paragraph. of the Vice-Chancellor's opinion and the provisions of the decree reveal an assumption of such jurisdiction.

Nor is there any merit in the final contention of error in "the failure" of the decree to provide for the application of "the balance of the net rents from the real estate" to the "reduction of the amount advanced" by the trustee "out of its own individual funds" for the purchase of the tax sale certificate.

This question was not raised below. There was evidence that the balance in the hands of the Haldeman trustee was $157.19, but no showing that this was the net amount on hand after payment of all obligations; and we do not read .the decree as determinative of this ·question. It is one for disposition on the trustee's accounting.

Decree affirmed.

*For affirmance*—The Chief-Justice, Parker, Case, Bodine, Heher, Perskie, Porter, Colie, Wells, Rafferty, Hague, Thompson, Dill, JJ. 13.

*For reversal*—None.