232 P.2d 991

## WOLLARD et al. v. SULIER et al.

### No. 5267.

Supreme Court of New Mexico.

May 24, 1951.

Rehearing Denied July 10, 1951.

Grant, Shafroth & Toll and Charles H. Haines, Jr., all of Denver, Colo., Jose E. Armijo, Las Vegas, Gilbert & Gilbert, Santa Fe, for appellants.

Noble & Spiess, Las Vegas, for appellees.

McGHEE, Justice.

This is an appeal from the judgment in a Declaratory Judgment action brought by the Executrix, Trustees and Marie Sulier Schwede, a beneficiary, for the construction of the will of Vida E. Sulier, deceased, and instructions in the performance of their duties.

The first question presented is whether the District Court had jurisdiction in this proceeding, the defendants asserting that only the District Court in which the probate case was pending had jurisdiction in the case.

Aside from the jurisdictional question, the question presented by this appeal is the correctness of the holding of the trial court that real property devised to the trustees with instructions to sell it on the termination of the trust, and to divide the proceeds among the defendants who are brothers of the deceased, is primarily liable for the ex-

penses of administration, debts and taxes, instead of personal property devised to Josephine Wollard and Marie Sulier.

The plaintiffs contend the residuary realty was converted into personalty, while the defendants say it was not a true conversion but only for convenience of distribution of the proceeds, but in any event there was a reconversion and it should be treated as realty.

We held in Dunham v. Stitzberg, 53 N.M. 81, 201 P.2d 1000, that the probate court did not have jurisdiction over real estate, and we are not disposed to add to the woes caused by that decision unless forced to do so. There is a conflict in the authorities as to whether a declaratory judgment action may be maintained in such an action as the present one, but no one can question the beneficial results that will follow its use in this state in proper cases. Notwithstanding the divergence of the holdings in other states, our previous decisions in Perea v. Barela, 6 N.M. 239, 27 P. 507, Candelaria v. Miera, 18 N.M. 107, 134 P. 829, Barka v. Hopewell, 29 N.M. 166, 219 P. 799, and First National Bank of Albuquerque v. Dunbar, 32 N.M. 419, 258 P. 817, afford ample authority for upholding the jurisdiction of the District Court in this proceeding. Any doubt on the subject is laid at rest by our recent opinion in Hendricks v. Hendricks, 55 N.M. 51, 226 P.2d 464, where we held the allegations of the complaint disclosed the action

was one to establish a trust, and the plaintiff was not limited to a determination of his claims in the Probate Court. We hold the District Court had jurisdiction in the Declaratory Judgment action to construe the will and give the executrix and trustees its judgment.

The will, except for the formal parts, reads as follows:

"1. I direct that all my just debts and funeral expenses and the expense of my last illness be paid and discharged as soon as conveniently may be after my decease.

"2. I give, devise and bequeath to my brothers, Aloysius Miles Sulier, Louis Carnot Sulier and David John Sulier, each the sum of Ten ($10.00) Dollars.

"3. I give, devise and bequeath to my niece, Marie Sulier, and to Josephine Wollard, my residence property, situated at 215 Grand Avenue, in the city of Las Vegas, County of San Miguel, State of New Mexico, together with all my personal property and effects of every kind whatsoever and wherever situate, to have and to hold the same, share and share alike, as their absolute property.

"4. All of the rest, residue and remainder of my property, whether real, personal or mixed and wherever situate (hereinafter sometimes referred to as the "Trust Estate"), I give devise and bequeath to Josephine Wollard and M. E. Noble, both of Las Vegas, New Mexico, as Trustees, and to their successor and successors in trust, for the uses and purposes and upon the terms and conditions herein stated:

"(a) I authorize and direct my said Trustees to pay out of the net income from the Trust Estate to or for the benefit of my niece, Marie Sulier, in such amounts as may be necessary to provide her with living expenses and necessities and the tuition and cost of a business course in an accredited school to be selected by said Marie Sulier, until such time as said Marie Sulier shall have completed said business course, or until she shall have reached the age of twenty-one (21) years. I further direct my Trustees, during the term of this Trust, to provide my brother, Leo A. Sulier, with those things essential to his comfort and convenience to the same extent as I have heretofore provided them. The trust hereby created shall terminate when said Marie Sulier reaches twenty-one (21) years of age, or upon her death before reaching that age.

"(b) This Trust is primarily for the maintenance and education of my said niece, Marie Sulier, and for the purpose of supplying my said brother, Leo A. Sulier, with the comforts heretofore mentioned, and I direct that the net income derived therefrom shall be applied to such purposes to the extent necessary, and any balance of the net income shall be added to the corpus of the Trust Estate.

"(c) During the term of this Trust, my said Trustees shall have full power and authority to collect all rentals and income of every kind and character from the property composing the trust Estate, to pay all taxes, assessments and liens against said property, and to maintain the properties composing the Trust Estate in good repair and condition. In the event of any emergency requiring the expenditure of a greater amount than the net income from the properties composing the Trust Estate for the purpose of carrying out the provisions of this Trust, or in the event of the illness of my said niece, Marie Sulier, requiring extraordinary expenditures, I give and grant to my said Trustees the power to sell such properties as may in their judgment be necessary and may by them be deemed proper for the purpose of supplying funds to meet any such emergency.

"(d) Upon the termination of this Trust, I direct the Trustees to deliver, and hereby give, devise and bequeath to Marie Sulier and Josephine Wollard, to have and to hold the same as their absolute property, share and share alike, the following described properties, all located in the city of Las Vegas, New Mexico, to-wit:

"Property at 203 Grand Avenue and the duplex situated on said lot.

"Properties at 219 Grand Avenue, 221 Grand Avenue, and 223 Grand Avenue, and properties at 210 and 212 Ninth Street, in said City.

and upon the termination of this Trust I direct the Trustees to sell and dispose of all of the remaining property composing the Trust Estate and divide the proceeds from such sales equally between my four brothers, Alloysius Miles Sulier, Louis Carnot Sulier, David John Sulier and Leo A. Sulier.

"5. I hereby make, constitute and appoint Josephine Wollard, of Las Vegas, New Mexico, as Executrix of this, my Last Will and Testament, and direct that she be permitted to serve without giving bond as such Executrix, and I direct that my said Executrix advise and confer with my attorney, M. E. Noble, in all matters in connection with the handling of my estate."

The testatrix passed away after her niece reached the age of 21 years, so the interests of all beneficiaries vested at the time of her death.

The brothers elected to take the real estate in specie instead of having it sold and the proceeds divided among them. A partial decree was entered in the District Court sitting in probate allowing this to be done, with a provision it should not prejudice the rights of other beneficiaries.

The appellants contend the personal property, all of which went to Josephine Wollard and Marie Sulier, is first liable for debts, expenses and inheritance taxes, and that it must be exhausted before resort may be had to the realty. Such is undoubt-

edly the general rule. Dunham v. Stitzberg, supra. Section 33–714, New Mexico Statutes, 1941 Compilation, reads: "Whenever after inventory and appraisement therein as provided by law, it shall appear that the personal estate of any decedent is insufficient to discharge the just debts allowed against his or her estate and the legacies charged thereon, resort may be had to the real estate, and the same may be sold, mortgaged, or leased by the executor or administrator in cases where power to that end is contained in the will, or otherwise upon the order of the court, * * *."

The appellees say there was an equitable conversion of the residuary realty into personalty, and that it is the primary fund for the payment of debts, expenses and inheritance taxes, to the exclusion of specific or general legacies.

The rule as to equitable conversion of realty into personalty by creation of a trust with direction to the trustees to sell and distribute the proceeds is stated in Scott on Trusts, Vol. 1, Sec. 131, as follows:

"Where a testator devises real property in trust and directs the trustees to sell the property and hold the proceeds in trust or distribute them, the interest of the beneficiaries is personal property, whether or not the trustee has sold the property. The direction to sell the land causes what is called an 'equitable conversion' of the real estate into personalty. * * *

"There is an equitable conversion not only where there is a specific direction in the will to sell the land but also where the duty of the trustee to sell it arises by implication from the terms of the trust. * * *

"There is an equitable conversion where the trustee is directed to sell the land, even though it is not his duty to sell it immediately. It is sufficient that there is imposed upon him by the trust instrument an absolute duty to sell at some time. * * *"

This court had the question of equitable conversion before it in Citizens National Bank of Albuquerque v. First National Bank, 29 N.M. 273, 222 P. 935, 937. There real property had been devised to trustees with directions to manage it, collect the rents therefrom, pay the taxes, and do all other acts which the testator could have done, and to sell it for such price and at such time as they might think would be to the best interests of the beneficiaries and to divide the proceeds. One of the beneficiaries borrowed money from the First National Bank and assigned his interest in the estate as security. The Citizens Bank had procured a judgment against the same beneficiary and caused execution to be levied on his interest in the real property, and then brought suit to foreclose the lien. This court in an opinion by Mr. Justice Parker held the realty was converted into personalty immediately upon the death of

the testator, and that the judgment lien had never attached to the realty. We quote from the opinion:

"It is well settled that the owner of property may, by way of will, and in many other ways, change the nature or character of his property, so that thenceforth it partakes of the character which the owner desires. * * *

"The intention of the testator is immediately upon his death effectuated by the application of the equitable doctrine or maxim that 'Equity regards as done that which ought to be done.' This proposition is universally accepted, and there is in this case, no controversy about it.

"In determining whether real estate has by the terms of the will been converted into personal property, the intention of the testator is of paramount and controlling importance. This intent, when correctly and certainly ascertained, governs in all cases. It is manifested, of course, by the terms of the will, properly interpreted. The more simple form of a testamentary conversion of real estate into personalty is where the lands are devised to executors and trustees, with specific and mandatory directions to convert the same into money, and to distribute the same to the beneficiaries. Here there is no room for interpretation, for the intention of the testator is clearly and unequivocally expressed, and the conversion takes place immediately upon his death. There is not and could not be any controversy in this case about this proposition."

There the trustees were given discretion as to when the trust property should be sold; here the direction is to sell upon the termination of the trust and to divide the proceeds among the brothers. We are of the opinion there was an equitable conversion and the real property going to the brothers should be treated as personalty, unless their election to take in specie worked a reconversion to the extent that it should now be treated as realty in disposing of the question now under consideration. The decree allowing the brothers to take in specie, rather than have the realty sold and the proceeds distributed, provided such action should not prejudice the rights of any one. It was not appealed from and is now the law of the case. While the brothers had a right to reconvert, they could not by so doing prejudice the rights of other beneficiaries. Camden Trust Co. v. Haldeman, 133 N.J.Eq. 427, 33 A.2d 611; Morse v. Hackensack Savings Bank, 47 N.J.Eq. 279, 20 A. 961, 12 L.R.A. 62; Camden Trust Co. v. Cramer, 136 N.J.Eq. 261, 40 A.2d 601.

It should be remembered that the will directed the trustees to collect the rents, support the niece and send her to business college, support one brother as she had done in the past, pay taxes, upkeep, etc., and put the remaining money into the

corpus of the trust which would go to the brothers, thereby showing a clear expectation that such money would pass under the residuary clause of her will along with the proceeds of the real estate going to her brothers, thus clearly indicating a gift of a mixed residue, that is, rental money and the proceeds of the sale of the realty.

It is stated in Lewis v. Darling, 16 How. 1, 57 U.S. 1, 14 L.Ed. 819, the rule is where a testator gives several legacies, and then, without creating an express trust to pay them, makes a general residuary disposition of the whole estate, blending realty and personal property in one fund, the real estate will be charged with the legacies, for in such case the residue can only mean what remains after satisfying the previous gifts. The opinion then states: "Such is the settled law both in England and in the United States, though cases do not often occur for its application. Where one does occur, a legatee may sue to recover the legacy, without distinguishing in his bill the estate into the two kinds of realty and personalty, because it is the manifest intention of the testator that both should be charged with the payment of the money legacies. Nor does this conflict at all with that principle of equity jurisprudence, declaring that generally the personal estate of the testator is the first fund for the payment of debts and legacies. The rule has its exceptions, and this is one of them."

See also: Gorman v. McDonnell, 127 Ala. 549, 28 So. 964; Walters v. Young, 12 Del.Ch. 297, 114 A. 164; Prettyman v. Marcy, 205 Ill.App. 222; Coon v. Coon, 187 Ind. 478, 118 N.E. 820; Peebles v. Acker, 70 Miss. 356, 12 So. 248; In re Strolberg's Estate, 106 Neb. 173, 183 N.W. 97, 26 A.L.R. 643; In re Baylis' Estate, 95 N.J.Eq. 120, 121 A. 787.

The books are so full of cases on the construction of wills that one pursuing the subject has a hard time to avoid being lost in the wilderness, but, after all, it is a question of determining the intent of the testator. We are of the opinion that a fair construction of the entire will shows the testator desired Miss Wollard and her niece to take the realty and personalty devised to them clear of any charges, as their absolute property, and that the property going to the brothers should bear the burden of debts, expenses and taxes if it is sufficient to discharge them. In so holding we are not unmindful of the fact that this construction gives a considerable portion of the property to a stranger to the blood of the testator, but it was hers to will as she desired, and to our minds her intent is clear.

The judgment will be affirmed, and It Is So Ordered.

SADLER and COMPTON, JJ., and A. W. MARSHALL, District Judge, concur.

LUJAN, C. J., and COORS, J., did not participate.

FRED J. FEDERICI, District Judge (specially concurring).

The majority in construing the will holds in part as follows: "It should be remembered that the will directed the trustees to collect the rents, support the niece and send her to business college, support one brother as she had done in the past, pay taxes, upkeep, etc., and put the remaining money into the corpus of the trust which would go to the brothers, thereby showing a clear expectation that such money would pass under the residuary clause of her will along with the proceeds of the real estate going to her brothers, thus clearly indicating a gift of a mixed residue, that is, rental money and the proceeds of the sale of the realty."

I take this to mean as follows, namely, that the trust was created from the residue of the estate and that the trust estate consisted of (1) residuary realty and (2) residuary personalty resulting from unexpended income contemplated by the testatrix to be derived from the trust realty.

The majority then concludes the opinion by construing the will as follows: "We are of the opinion that a fair construction of the entire will shows the testator desired Miss Wollard and her niece to take the realty and personalty devised to them clear of any charges, as their absolute property, and that the property going to the brothers should bear the burden of debts, expenses and taxes if it is sufficient to discharge them."

I take it from this that the testatrix contemplated the "rest, residue and remainder" of her estate as meaning what was left after the payment of debts, legacies, taxes and expenses.

If the foregoing was the intention of the testatrix, then any discussion in the majority opinion as to the equitable conversion of the residuary realty into personalty, and election to take the real estate in specie instead of its proceeds, and the reconversion of the personalty back into realty, becomes mere dicta.

The will having been construed by the majority as above set out, I concur in the result reached on the ground that if there is insufficient residuary personalty to pay estate debts, then resort may be had to the residuary realty.